[Civ. No. 8956. First Appellate District, Division One.—March 2, 1934.]

NORTH HOLLYWOOD MORTGAGE COMPANY (a Corporation), Appellant, v. NORTH AMERICAN BOND & MORTGAGE COMPANY (a Corporation) et al., Respondents.

Wheeler & Wackerbarth and Henry E. Carter for Appellant.

Bailie, Turner & Lake, Bryan, Button & Cummins and Button & Johnston for Respondents.   .

McNUTT, J., *pro tem.*—This is an appeal by plaintiff from a judgment of dismissal of its suit entered by the Superior Court for the County of Los Angeles on motion of the defendants on the grounds (a) that contentions of the plaintiff have already been adjudged adversely to it in an action in said court numbered 279048, wherein plaintiff herein was plaintiff, and defendants were said Henshey, Tatem et al., defendants herein, reference to further particulars being made to the judgment-roll which is made part of the motion; (b) that the present action is frivolous; (c) that it is an imposition on the court; (d) that it is baseless; (e) that plaintiff shows no right to enforce any right or rights by the present action; (f) that it is vexatious; (g) that it is barred by laches and the statute of limitations; (h) that the court has inherent power independent of statute to dismiss it.

Said motion was also made ''on what counsel has stated at the time said motion was made'' (Reporter's Transcript, p. 39) and was based upon all the files and records in the action, including the notice of motion and judgment-roll in the action adverted to.  ▆  Since it appears that the judgment of the trial court in dismissing said action numbered 279048 was reversed by the District Court of Appeal the ground of estoppel by that judgment is eliminated as one of the bases for the motion to dismiss in the instant case.  Since among the grounds upon which the judgment was entered was an agreement of material facts reached during the colloquy between and among counsel and court on the presentation below, said judgment is in effect one upon the merits that plaintiff take nothing by its action.

A chronological statement of salient facts taken from the pleadings and from the admitted facts though they be not pleaded in such order will give lucidity to plaintiff's legal theory as applied to such facts.  In June, 1924, the B. F. Tatem Finance Corporation (hereinafter called the Finance

Company) was organized; up to the year 1927 it was engaged in the business of automobile financing; B. F. Tatem—not joined as a defendant—would seem to have been its dominating genius. About October 15, 1925, Tatem commenced, and in April, 1927, accomplished, the first of his alleged iniquities upon the Finance Company by so operating a real estate deal with one Brokaw as to make for himself a secret profit of $45,196.29 at the time he was president and general manager of the Finance Company. On or about December 31, 1925, and while still president and general manager thereof, Tatem next secretly mulcted the Finance Company by, contrary to the order of the corporation commissioner, causing the retirement of 10,000 shares of its common stock and withdrawing $30,000 from the company as the consideration of said retirement; that between the date of its organization and its dissolution by judicial decree, December 28, 1928, Tatem perpetrated the third and last of his alleged depredations upon the Finance Company by misappropriating $27,785 and converting same to his own use. Assuming that Tatem, operating either through a biddable board of directors, or secretly, thus possessed himself of corporate assets, it is familiar law that there arose a series of causes of action in the aggrieved corporation to be asserted by that corporation at the instance of its board of directors; by a suit on its behalf by its stockholders as its representatives, where the board had refused to act; in the trustees on dissolution, or in "the reincorporation, reorganization or successors of the B. F. Tatem Finance Corporation", as plaintiff claims to be.

Now plaintiff enters. It is alleged that it is and at all of the times in the complaint mentioned was a California corporation with its place of business in Los Angeles; that it is and during all of the times (except as otherwise alleged) was the owner of a certain piece of land; that on February 9, 1928, it executed its promissory note for $40,000 payable on or before a year from date bearing interest at seven per cent—with an acceleration clause. Said note was payable to defendant Henshey; the full consideration therefor was received from Tatem; on said date plaintiff executed a deed of trust on said land and delivered it to defendant North American Bond & Mortgage Company as trustee for defendant Henshey, as beneficiary. Henshey indorsed

the note to Tatem who indorsed it to a bank before maturity and for a valuable consideration; after maturity the said bank reindorsed it to Tatem "who at the same time and as a part of the same transaction indorsed it to defendant Bower".

That prior to October 30, 1930, Bower, as owner and holder of this secured note, delivered to the said North American Bond & Mortgage Company, trustee, an election to declare a default, properly thereafter recorded, and the trustee caused notice of sale to be published, sale to take place February 25, 1931.

The complaint herein was filed February 24, 1931. No restraint *pendente* was sought so that on the hearing of the motion to dismiss August 3, 1931, the sale had taken place and the property had been bought in by Bower for the amount due under the note so secured by the deed of trust.

During the discussion in the court below precipitated by the motion to dismiss, attention of plaintiff's counsel was drawn to the futility of seeking to enjoin a sale which had taken place, he thereupon said "we are going to set it up in a supplemental complaint", referring to an attack upon "the document which arose after this litigation was filed". (Reporter's Transcript, p. 25.) Application for leave so to do was not asked, and none was proffered, none was filed but the motion was made on the "points set forth in your written pleadings and filed here", also the admissions and statements made by counsel in open court.

Tatem had meanwhile died. Neither he nor his representative was a party to the action and there is no allegation that he was or his estate is insolvent. Plaintiff, it may be observed, received its full $40,000 for the note, it makes no offer to return it or to do equity, and it was stipulated that no defendant was a participant in any fraud committed by Tatem, none of whose alleged frauds tainted the said note.

Plaintiff's theory seems to be that it has succeeded to the Finance Company's right of redress against Tatem on account of sums of money that he illegally took from it; and that since they vastly overtop in amount the claim of Tatem's assignee defendant Bower against the plaintiff, the latter may seek an accounting of Tatem, charge Bower with the results and offset Bower's claim on the $40,000 note by

Tatem's peculations. This argument is grounded upon the erroneous assumption that Bower stood before the court below as an actor, plaintiff or suitor, seeking the aid of a court to foreclose or otherwise realize upon or reduce to a liquidated amount the said claim against plaintiff at bar. Whereas Bower occupied no such position. The trustor (plaintiff) named defendant bank trustee for Bower (or his assignor); Bower caused the property to be sold and bought it in, no attempt having been made by plaintiff to stop him. The facts here render inapplicable the case upon which in respect to compensating demands plaintiff places reliance, namely: *Ripley Improvement Co.* v. *Hellman Commercial Trust & Savings Bank,* 90 Cal. App. 83 [265 Pac. 835]. There the bank held a trust deed and note secured thereby, executed by plaintiff. The bank also held a sum of money which it had previously wrongfully exacted from plaintiff. The suit was brought to compel the bank to apply so much of said money as was necessary to extinguish the trust deed note. In the present case Bower is not alleged to have anything of plaintiff's which could be applied upon its $40,000 note. ■ All intendments support the validity of the judgment below, and since the judgment was avowedly based upon all the propositions advanced as grounds for dismissal, this court cannot say that the grounds of laches, the statute of limitations, that plaintiff's complaint states no cause of action against the defendant, and that defendant Bower was a holder in due course, were not adequate to support the judgment without regard to the failure of the ground of estoppel by judgment to support the same. It is thus apparent that there is no equity in plaintiff's bill and no showing is made why its remedy at law against Tatem was not adequate.

■ Plaintiff asserts that the manner of its succession to the rights of the finance corporation to sue Tatem, or putting it in another way, to any right which the latter company had against Tatem or through him against Bower appears by virtue of the allegations of paragraph XI of its complaint. Admittedly, then, its entire case (other bases of the judgment of dismissal aside) stands or falls with the sufficiency of the facts pleaded in paragraph XI to carry any cause of action into it from the finance corporation.

From paragraph XI we quote briefly: "That the plaintiff herein is the reincorporation, reorganization or successor of the B. F. Tatem Finance Corporation, as will appear from the following facts." The last qualifying clause renders the opening clause thereof but a mere conclusion. Limitations of space prevent a complete analysis of the contents of this paragraph XI, but it may be generally observed that, instead of containing recitals of things that had occurred to warrant the deduction that plaintiff was the reincorporation, reorganization or successor of Tatem Finance Corporation, the complaint contains recitals of suggestions that were made and embodied in the form of various resolutions looking towards the accomplishment of such purpose but which it cannot be said from any allegation of fact ever fructified. Certain recommendations were made at the instance of Tatem to the stockholders by the board of directors but they were not carried out. For example, there is no allegation that plaintiff owned any stock in the Finance Company at the date of the latter's dissolution December 28, 1928 (subparagraph 9 of paragraph XI of the complaint), or at any time after November 3, 1928. The present action was not commenced until February 24, 1931. ▮ Of course, on dissolution of the Finance Company, the title to its property passed to the persons who were its stockholders at the time of dissolution. (7 Cal. Jur., pp. 170 and 171.) After dissolution its trustees are the only persons who may prosecute an action to recover damages arising from fraudulent misappropriations and acts by which the corporation was defrauded (7 Cal. Jur., p. 174); and if these trustees were disqualified to act the court upon application of a stockholder or creditor might appoint new trustees. The effect of the dissolution of a corporation is to terminate its existence. (7 Cal. Jur., p. 137.) The complaint further alleges that the plaintiff corporation was at all times in the complaint mentioned a corporation organized and existing under the laws of the state of California, so that it had been a corporate entity at least all the time that the Finance Company had had such character up to the date of the latter's dissolution. The only thing that would seem to have passed from the Tatem Finance Company to the plaintiff were two pieces of real property. In brief, there are no allegations adapted to show reorganiza-

tion, reincorporation or successorship in interest. There is no allegation in the complaint that plaintiff at the time of the commencement of this action was a stockholder of the Finance Company.

As equity withholds its aid from those who sleep upon their rights (if they have any), matters pertinent to its failure to have proceeded in a timely manner will be noticed. It is alleged upon information and belief that during the months of October, November and December, 1925, and January, 1926, and at the time when the transactions were in the making whereby Tatem took his first profits in the Brokaw real estate deal, that Tatem was in full and complete charge of the business and affairs of the Finance Company and that its board of directors were under his domination. There is no allegation that its books were not available at all of said times to the stockholders nor is any fact alleged why the audit of the books which is said to have been made in May, 1929, might not have been made at an earlier date. It is further alleged that until the year 1929 Tatem concealed from the Finance Company and from plaintiff the fact that he had made this secret profit of $45,196.29. The manner of concealment is not alleged nor is any fact disclosing the manner of discovery, much less why the discovery might not have been made at an earlier date. For aught that appears in the complaint, Tatem continued in the above relationship to the Finance Company up to and during the time of the discovery of the alleged peculations and was one of the trustees appointed on dissolution of the Finance Company by judicial decree, December 28, 1928. At all events the instant suit was not filed until the twenty-fourth day of February, 1931, and no effort is made to account for its not having been filed sooner.

The same reasoning applies to the second and third alleged causes of action as far as regards laches. The second cause of action arose in December, 1925, and was discovered by accountants in May, 1929. The third cause of action, namely, that of misappropriation of $27,785 by Tatem, is said to have arisen some time between the dates of organization and dissolution respectively of the Finance Corporation, its discovery by plaintiff being assigned to the month of May or June, 1929. We repeat that for aught that appears in this complaint, Tatem was just as much

the dominating genius of the Finance Company and/or the plaintiff, its alleged successor, at the time the audit was made, as he was earlier, and therefore plaintiff has not met the necessity of alleging facts to show that its discovery of Tatem's alleged frauds could not have been made at an earlier date.

■ Apart from any other defense available to Bower, she being a purchaser after maturity of a note negotiated before maturity to a holder in due course, she stood in the shoes of said holder and not in the shoes of the original payee. Therefore, plaintiff could not assert against her the cause of action, assuming it to inhere in plaintiff, sought to be offset by its suit. Section 3139 of the Civil Code, provides: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

The fact that Bower took from the bank through Tatem is of no significance to the contrary because it is admitted that Tatem was not nor was anybody a party to any fraud or illegality affecting the instrument, as the $40,000 note was not tainted by any fraud whatever, the corporation plaintiff having received the full $40,000 consideration upon the issuance thereof.

The judgment, therefore, should be and accordingly is affirmed.

Tyler, P. J., and Knight, J., concurred.