Filed 7/12/13  Dudley v. Faustine CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| REBECCA DUDLEY,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>WILLIAM P. FAUSTINE, Individually and as Trustee, etc., et al.,<br><br>    Defendants and Respondents. | C066469<br><br>(Super. Ct. No. T09/3745C) |

Plaintiff Rebecca Dudley sought to recover possession of real property her deceased parents had jointly owned more than 50 years ago.  In her second amended complaint, she alleged her father forged a quitclaim deed in 1960 to transfer title to himself in violation of a divorce decree that had awarded the property to her mother, and then in 1966 fraudulently sold the property as his separate property.  She asserted that as the sole heir of her mother, she was entitled to the property under the laws of intestate succession.

1

The trial court sustained for a second time a demurrer filed by the property's current owners, defendants William and Cathy Faustine, and it did so without granting leave to amend. Appearing before us pro per, plaintiff claims the trial court erred in sustaining the demurrer. She asserts she pleaded sufficient facts to state a cause of action and that her complaint is not time barred. She also claims the court committed various procedural errors.

We disagree with plaintiff's contentions and affirm the trial court's judgment. We conclude she is estopped from recovering on her cause of action by laches.

FACTS

Because this is an appeal following a successful demurrer, we accept as true all facts properly pleaded in plaintiff's complaint. We also incorporate any facts of which we may take judicial notice. (*Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 200.)

In 1959, plaintiff's parents, Robert and Genevieve Dudley, purchased real property in Truckee, Nevada County, near Donner Lake. The property has a cabin on it.

Genevieve later that year petitioned for divorce. On October 9, 1959, the trial court entered an interlocutory order dividing the couple's property. Among other matters, the court awarded to Genevieve the "cabin at Donner Lake."

However, by a deed dated and recorded in 1960, Genevieve quitclaimed her interest in the property to Robert. Later that same year, the trial court entered the final judgment of divorce, and it incorporated the interlocutory order into its judgment. It made no modification for Genevieve's transfer of the property to Robert. A copy of the judgment was recorded in Nevada County in 1964.

Plaintiff alleges that despite the quitclaim deed to Robert, Genevieve and Robert acted as if Genevieve still owned the property. Genevieve continued to pay taxes on the property after the quitclaim deed was filed up until 1966. In a 1961 affidavit in support

2

of a motion to modify the divorce decree, Robert stated Genevieve had received "a cabin located at Donner Lake and the equity was approximately $3500.00."

In 1966, however, Robert conveyed ownership of the property to Laurence and Ruth Cadwell. The grant deed documenting this transaction stated Robert had held the property as his separate property.

In 2004, the Cadwells' successors in interest conveyed the property to defendants.

Genevieve died in 1979. Robert died in 2007. Plaintiff alleges she did not learn about the property and its history until after her father's death.

Plaintiff sought to obtain title to the property. She filed her original complaint on October 5, 2009. In that complaint for declaratory relief, plaintiff alleged the final divorce judgment confirmed ownership of the property on Genevieve and superseded the quitclaim deed. She sought a declaration that the property belonged to her as Genevieve's sole heir.

Before defendants filed a responsive pleading, plaintiff filed her first amended complaint. In that complaint, plaintiff alleged causes of action for fraud, cancellation of documents, quiet title, and declaratory relief. She continued to assert the final divorce judgment vested title in Genevieve, and she also alleged Robert's conveyance of the property in 1966 to the Cadwells was fraud. In addition, she alleged the existence of a "transfer deed" that had conveyed title in the property from Robert back to Genevieve. She sought the cancellation of all documents on which defendants based their claim of title.

Defendants filed a demurrer. They argued the alleged facts demonstrated they were bona fide purchasers who acquired the property without notice of any interest in the property by Genevieve. They claimed Genevieve could not have obtained title to the property under the divorce judgment. The interlocutory divorce order and the final divorce judgment could not convey title to Genevieve by operation of law, and neither document satisfied the statutory requirements to qualify as a written conveyance of

3

property.  Defendants also claimed the complaint was barred by the applicable statutes of limitations and laches.

The trial court sustained the demurrer with leave to amend.  It ruled the divorce judgment did not convey title, and, in light of the quitclaim deed, plaintiff could not state a claim to the property via Genevieve.  Even if she could, any such claim would be barred by the statute of limitations and laches.  However, the court stated her claim regarding the alleged deed that transferred title from Robert back to Genevieve lacked specificity, and it granted leave to amend on that basis.  To provide the needed specificity, the court ordered plaintiff to attach to her new pleading a copy of the alleged deed.

Plaintiff's second amended complaint continued to allege causes of action for fraud, quiet title, cancellation of documents, and declaratory relief.  Contrary to the trial court's instruction, however, plaintiff did not attach a copy of the deed she had claimed in her first amended complaint transferred the property from Robert back to Genevieve.  Instead, she alleged that while searching for documents, she saw on a computer screen in the Nevada County Recorder's Office an electronic copy of a warranty deed by which Robert conveyed his interest in the property to Genevieve.  This deed was allegedly dated later than the quitclaim deed from Genevieve to Robert.  She allegedly saw this deed shortly before the recorder's office closed for the day.  She did not provide any other identifying information concerning this deed or allege that whatever she saw had been officially recorded.

Also in her second amended complaint, plaintiff raised a new factual allegation. She no longer asserted title to the property passed to Genevieve through the divorce decrees.  Instead, she asserted for the first time that the 1960 quitclaim deed from Genevieve to Robert was a forgery, and that it thus voided the chain of title derived from it.

4

To support her forgery allegation, plaintiff hired Michael Nattenberg, allegedly "a person qualified as a[n] examiner of questioned documents," for an opinion on whether the quitclaim deed was forged. Plaintiff attached as an exhibit to her second amended complaint a letter from Nattenberg wherein he summarized his review of the deed. He wrote: "The Document in Question is of such poor quality that no date or signature of the person on the deed can be established. [¶] The document is nearly totally illegible and therefore can have no standing as establishing any facts relating to the property in question. [¶] It is a document with no legible signature."

Defendants again filed a demurrer. This time, the trial court sustained defendants' demurrer without leave to amend. It found the complaint was ambiguous, unintelligible, filled with conclusions and legal arguments, and missing a prayer for relief. In addition, the one document necessary to support her claims, the alleged deed from Robert to Genevieve, had not been attached as the court had directed. The court stated that document was necessary because of the fact-based pleadings plaintiff used in her first amended complaint.

The court also determined the complaint failed to state sufficient facts for each cause of action. The Nattenberg letter failed to support plaintiff's claim of forgery, as it stated the quitclaim deed was so unintelligible it had no standing to establish any facts regarding the property. Plaintiff's assertion that she saw a deed transferring title from Robert back to Genevieve was not sufficient to state a cause of action. Without a copy of that deed, the court could assume only that the deed did not exist.

The court also stated at oral argument that it found the causes of action for equitable relief were barred by laches. The failure of Genevieve to attempt to quiet title while she lived, coupled with plaintiff's attempt to do so more than 30 years after Genevieve's death, constituted unjustifiable delay.

Plaintiff appeals. She asserts the trial court committed errors by (1) instructing her at one point to retain an attorney; (2) not allowing her to file an opposition to the

5

demurrer to the second amended complaint; and (3) requiring her to present evidence of the deed she alleged transferred title from Robert to Genevieve. She also claims the trial court abused its discretion in not granting her leave to amend her complaint a third time.

DISCUSSION

I

*Procedural Errors*

Plaintiff asserts the court committed various procedural errors. We disagree with her contentions. We review each alleged error separately.

A.  *Instructing plaintiff to retain an attorney*

Plaintiff, who appeared in pro per before the trial court, claims the court wrongfully directed her to hire an attorney. The record, however, indicates plaintiff understood at trial that the court had not required her to retain an attorney, but instead had addressed her within the context of her ongoing attempts to retain counsel when it made the contested remark. The court did not err.

After defendants filed their demurrer to the second amended complaint, plaintiff requested an extension of time to respond. Her request was based in part on her inability to retain counsel. The trial court granted the request, but in resetting the hearing on the demurrer, the court informed plaintiff she was "to be here with a lawyer ready to rock and roll" on the new hearing date. The court's minute order stated plaintiff was to "appear with an attorney . . . ."

At the beginning of the hearing on the demurrer, however, the court (a different judge than the one who granted the extension of time) clarified the prior judge's direction that plaintiff appear with an attorney. The court stated it appeared to him the prior judge was not ordering plaintiff to appear with counsel, but was instead encouraging her to retain counsel because that was the ground on which it granted the extension. The court stated to plaintiff: "[W]e're not in the business of forcing people to get a lawyer if they

6

choose not to.  I hope you understand that."  Plaintiff replied:  "Yes, I understand that."  Plaintiff continued to represent herself without any objection by the trial court.

We agree with the trial court's interpretation of the record.  Plaintiff sought the extension of time because she had been unable to retain counsel and was still attempting to do so.  The court thus was not requiring plaintiff to retain counsel, but instead was encouraging her and the attorney she was seeking to find to be prepared for the next hearing.  The record indicates plaintiff understood this was the trial court's meaning.  In understanding the court's meaning, she acknowledged the court was not requiring her to retain counsel, nor was it precluding her from representing herself.  The trial court committed no error on this point.

B.      *Prohibiting plaintiff from filing an opposition*

Plaintiff claims the court erred in not considering her opposition to the demurrer.  We disagree, as the opposition was filed late.

Upon plaintiff's request for an extension of time, the court continued the hearing on the demurrer to August 16, 2010.  On August 5, 2010, defendants notified the court that they had received no opposition to their demurrer.  Plaintiff contends she attempted to file an opposition on August 12, 2010, by fax.  The record includes no opposition by plaintiff.

At the hearing on the demurrer, the court as a preliminary matter noted that plaintiff on August 12, 2010, had attempted to file a motion to strike the demurrer.  The court stated the motion was not timely filed and it would not consider it.

Plaintiff contends the court erred, but she is incorrect.  Opposition papers are to be filed no later than nine court days before the scheduled hearing.  (Code of Civ. Proc., § 1005, subd. (b).)  In plaintiff's case, her opposition papers were due August 3, 2010.  Her attempt to file them on August 12 was obviously tardy.

A court has discretion to refuse to consider papers filed late.  (Cal. Rules of Court, rule 3.1300(d).)  The court here did not abuse its discretion in refusing to consider

7

plaintiff's motion to strike.  She had been given extended time to file her opposition, and her attempt to file a motion to strike the demurrer two court days before the hearing would not have given the court and defendants sufficient time to consider it.

C.      *Requirement to attach deed to second amended complaint*

Plaintiff argues the trial court erred in requiring her to attach to her second amended complaint a copy of the deed she alleged transferred title from Robert back to Genevieve.  She claims the court should have taken as true her allegation of the deed's existence for purposes of the demurrer.  Under the circumstances of plaintiff's complaint, the court did not err.  Without a copy of the recorded deed, or at least sufficient information by which defendants could locate the deed, the amended complaint failed to give defendants sufficient notice of the cause of action against them.

"The essence of the matter is fairness in pleading to give the defendant such notice by the complaint that he may prepare his case." (*Leet v. Union Pac. R. R. Co.* (1944) 25 Cal.2d 605, 619.)  "The Supreme Court has consistently stated the guideline that 'a plaintiff is required only to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action.' (*Youngman* v. *Nevada Irrigation Dist.*[ (1969) 70 Cal.2d 240,] 245; *Smith* v. *Kern County Land Co.*[ (1958) 51 Cal.2d 205,] 209.)  It has also been stated that '[the] particularity required in pleading facts depends on the extent to which the defendant in fairness needs detailed information that can be conveniently provided by the plaintiff; less particularity is required where the defendant may be assumed to have knowledge of the facts equal to that possessed by the plaintiff.' (*Jackson* v. *Pasadena City School Dist.*[ (1963)] 59 Cal.2d 876, 879; *Burks* v. *Poppy Construction Co.*[ (1962)] 57 Cal.2d 463, 474.)" (*Semole v. Sansoucie* (1972) 28 Cal.App.3d 714, 719.)

At the time the trial court imposed the requirement to attach the alleged transfer deed, plaintiff had not yet pleaded the 1960 grant deed was a forgery.  Instead, she had

claimed title to the property had transferred back to Genevieve by means of the divorce judgment and the alleged transfer deed. The trial court correctly stated the divorce judgment did not convey title, and thus, in light of the quitclaim deed from Genevieve, plaintiff could not claim an interest in the property except by the alleged transfer deed she claimed existed.

Simply asserting, as plaintiff did in her first amended complaint, that Robert had transferred the property back to Genevieve by the transfer deed did not sufficiently plead the elements of her causes of action or provide defendants with the information they needed to defend against her claims. She did not allege defendants had notice of the conveyance, nor did her allegation give them sufficient information by which they could understand the claim, find the conveyance, and prepare a defense. The trial court correctly concluded the bare allegation of a reconveyance lacked specificity.

By directing plaintiff to attach a copy of a recorded deed, the court was instructing plaintiff how she could satisfy her pleading burden. She could have satisfied the burden by providing enough information about the deed so that defendants could have identified and found it. The trial court recognized the easiest way of doing this, however, was by attaching a copy of the alleged deed, a deed plaintiff claimed she had seen. Plaintiff had already attached every other relevant conveyance and document to her complaints. The court did not abuse its discretion by asking plaintiff to attach the one additional document that mattered most.

## II

### *Decision Denying Leave to Amend*

Plaintiff claims she pleaded sufficient facts to state a cause of action and to overcome any statute of limitations or laches defense. Because we and the trial court have concluded she cannot state a claim of title in the property based on the divorce judgment or any purported transfer deed, her complaint lives or dies based on the validity of her forgery claim.

9

A bona fide purchaser of real property generally takes the property free of any unknown rights in the property held by others. (*Hochstein v. Romero* (1990) 219 Cal.App.3d 447, 451.) However, "a forged deed is a nullity, even as to bona fide purchasers . . . ." (*Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1247.) Thus, if plaintiff can successfully allege an interest in the land based on the 1960 quitclaim deed being a forgery, her complaint would survive a demurrer.

Defendants argue plaintiff cannot base her claim on forgery as a matter of law and that we should uphold the trial court's sustaining of their demurrer without leave to amend. They contend (1) plaintiff is equitably estopped from attacking the quitclaim deed based on laches; (2) her claims are barred by the statute of limitations; and (3) she is prevented from attacking the quitclaim deed because her forgery allegations are inconsistent with the allegations in her previous complaints.

We conclude this is the rare case where laches can be determined on the pleadings alone, and we affirm the trial court's action on that basis.

The affirmative defense of laches may estop a party from attacking a forged instrument. (See *Merry v. Garibaldi* (1941) 48 Cal.App.2d 397, 401.) Laches is ordinarily a question of fact. (*Lasko v. Valley Presbyterian Hospital* (1986) 180 Cal.App.3d 519, 527.) However, the defense may be raised by demurrer, "but only if the complaint shows on its face unreasonable delay *plus* prejudice or acquiescence. [Citations.]" (*Conti v. Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 362, original italics.)

Plaintiff's second amended complaint pleads sufficiently detailed facts from which we can determine as a matter of law her cause is barred by laches. First, the second amended complaint shows on its face unreasonable delay. Although plaintiff herself acted without delay upon discovering the property after her father's death, she as a successor in interest to her mother's claim is held responsible for the delay of her

10

predecessor, namely, her mother Genevieve. (See *N. Hollywood M. Co. v. N. Amer. B. etc. Co.* (1934) 137 Cal.App. 180, 187.)

As shown by plaintiff's allegations, Genevieve unreasonably delayed bringing an action to enforce her alleged interest in the property. The complaint alleges facts that show Genevieve knew by 1966 the property had been transferred, but yet she took no action to regain her interest in it for the rest of her life, a period of 13 years. According to the complaint, Genevieve stopped paying property taxes on the property in 1966, the same year Robert transferred the property to the Cadwells. Her decision not to pay taxes on the property after 1966 indicates she was aware the property had been transferred and she was no longer responsible for paying property tax. At that point, Genevieve knew or should have known she no longer held an interest in the property, and if she believed she had been deprived of her interest wrongfully, she needed to act to protect it. Her refusal to act for the 13 years of her remaining life was unreasonable under these circumstances.

Second, the second amended complaint shows on its face that defendants will be prejudiced if plaintiff is not estopped from prosecuting the action. Where "an action is commenced many years *after its accrual*, the death of witnesses or destruction of evidence, presumed as well as actual, may prejudice the defendant and justify denial of relief because of staleness of the claim. [Citations.]" (*Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 736, original italics.) Such is the case here. The only two witnesses who could testify concerning the 1960 quitclaim deed, Genevieve and Robert, are deceased. In addition, plaintiff submitted evidence by a forensic document examiner who stated, in effect, that the handwriting on the quitclaim deed was so illegible it was impossible to determine whether the deed was in fact a forgery.

Thus, based on the facts and evidence pleaded by plaintiff, there is no possibility she can establish the 1960 quitclaim deed is a forgery. Under these circumstances, allowing the action to proceed against defendants would work a great prejudice to them.

11

For this reason, we conclude the trial court correctly denied plaintiff a third opportunity to file an amended complaint and sustained the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to defendants.  (Cal. Rules of Court, rule 8.278(a).)

      NICHOLSON    , Acting P. J.

We concur:

      BUTZ       , J.

      MAURO    , J.