Argued January 19, 1932.
On June 19, 1925, Emilie Bailey Collet, the daughter of the testator, presented her petition to the court, praying for a citation directed to David E. Hilsee, Harvey Gourley and William K. Haupt, trustees under the will of Charles W. Bailey, to show cause why they should not be dismissed as trustees, and the trustees filed their *Page 336 
answer to the petition. A replication having been filed, the case was, on September 26, 1925, referred to a master, who filed his report on June 14, 1927, recommending that the respondents be dismissed. Exceptions having been filed by the respondents and argued by counsel, it appeared that the sole petitioner was the life tenant under the testamentary trust, and the court being of opinion that the petition was defective for want of parties, the master's report was referred back to him, and other persons interested in the trust estate were brought in by citation, etc. The master filed a supplemental report on September 14, 1928, again recommending that the respondents be dismissed, and, on the argument of exceptions thereto, the report was again referred to the master in order that the petitioner might be cross-examined by counsel for those parties respondent who were not original parties to the proceeding. On June 20, 1929, the master filed his second supplemental report, again recommending a decree dismissing the respondents as executors and trustees under the will of Charles W. Bailey, deceased, and directing them to pay the costs. Exceptions having been filed by the respondents, the case was elaborately argued before LAMORELLE, P. J., GEST, HENDERSON, THOMPSON, VAN DUSEN and STEARNE, JJ. In consultation, the court was equally divided, LAMORELLE, P. J., HENDERSON and VAN DUSEN, JJ., voting to dismiss the exceptions filed to the master's report and to enter a decree dismissing the respondents as executors and trustees according to the master's report; GEST, THOMPSON and STEARNE, JJ., voting to sustain the exceptions and dismiss the petition. The court being equally divided, it appeared that no decree could be entered, and so, in accordance with the procedure as suggested in Madlem's App., 103 Pa. 584, approved in Summers v. Kramer, 271 Pa. 189, the HON.E. FOSTER HELLER, P. J., of the Orphans' Court of the 11th Judicial District, was called in to sit at a reargument and decide the case. A reargument was accordingly had *Page 337 
before the six judges of this court and Judge HELLER, and the latter, having read and considered the testimony, the reports of the master and the briefs of counsel, voted to sustain the exceptions to the master's report and dismiss the petition. Judge THOMPSON died suddenly before the opinion of the court could be written. He, however, had read and concurred in a draft opinion which was substantially the same as that now filed as the majority opinion of the court.
We may say that all the six judges of this court and also Judge HELLER have read the entire record of the case.
We shall now indicate the grounds of our opinion. To review in detail all of the record, which comprises over 1,250 printed pages, would be scarcely possible and we think unnecessary. We shall confine ourselves to a brief discussion of the important features of the case.
(1) It is a serious matter to dismiss trustees appointed by will; much more should be shown by those who wish them dismissed than would be the case where the trustees are appointed by the court. Perry on Trusts, 6th edition, 276, says: "The power of removal of trustees appointed by a deed or will ought to be exercised sparingly by the courts. There must be a clear necessity for interference to save the trust property. Mere error or even breach of trust may not be sufficient; there must be such misconduct as to show want of capacity or of fidelity putting the trust in jeopardy." The trustees' brief cites several cases in support of this.
(2) It is well worthy of consideration that of all the persons interested as beneficiaries or possible beneficiaries of this estate only Mrs. Collet wishes to remove the trustees; all the others either desire their retention or elect to remain neutral. To be sure, Mrs. Collet has much the largest interest; nevertheless, the attitude of the others should have some weight.
(3) It is strongly urged and indeed is the gravamen of Mrs. Collet's complaint that White's resignation as *Page 338 
one of the trustees, upon which there followed automatically the appointment of Hilsee in his stead, was fraudulently brought about by the conspiracy of Hilsee and Gourley. White was to be a trustee, according to the will (paragraph 15), only so long as he retained his office or position with Bailey, Banks Biddle Co., and upon his leaving the service of the company "from any cause" he was disqualified from acting under the will. And by paragraph 17, in the event of his disqualification, the testator appointed Hilsee in his place. We have not the slightest doubt from the testimony that White was properly removed as a director of Bailey, Banks Biddle Co., as he was incompetent, having neither the necessary knowledge nor experience in the jewelry business and was the cause of irritation and dissatisfaction. Hilsee, on the other hand, was a practical jeweler and well qualified to conduct the business of the company, which prospered accordingly. It will be remarked that Mrs. Collet was, and is, entirely willing for White to leave the directorate of the company, but she claims that he should have been retained as trustee, contrary to the express terms of the will. Mrs. Collet does not even now ask that he be restored as trustee, nor does White himself demand it. Mrs. Collet simply urges that all the circumstances connected with his retirement were not stated to her at the time; in other words, the only fault alleged of Gourley and Hilsee is a lack of frankness. It is true that she was not expressly told that his dismissal from Bailey, Banks Biddle Co. would result in his retirement as a trustee, but she either knew it or should have known it. According to Gourley's testimony, he had a conversation with GEST, J., when he presented the petition to the court for Hilsee's appointment. Judge GEST does not remember the facts, but could not say that Gourley's testimony is not true, and the general proposition is correct that, where a vacancy occurs in the trusteeship, his successor, appointed by the will, takes his place automatically. If all the facts had been stated, *Page 339 
the court might have called for further explanation or directed notice; but White's resignation as a trustee was voluntary; he need not have made it, and, in the long run, we think the same result would have followed.
(4) The Lawyer account. The testimony as to this is difficult to analyze. The master was of two minds, possibly three. First, he thought it was principal, and that the trustees were wrong in paying to Mrs. Collet the $25,000 received in the settlement from Bailey, Banks Biddle Co.; then he thought it was income, and, finally, that it was neither principal nor income of the Bailey Estate, because it was earned by the capital of Bailey, Banks Biddle Co. He thought this was ground for dismissal of the trustees on the petition of the woman who actually got the money, Bailey, Banks Biddle Co. making no claim thereto. But even if the payment was erroneously made, it was made in good faith, and afforded no ground for dismissal. It seems to us the indebtedness of the Lawyer account to Bailey, Banks Biddle Co., at the time of Charles W. Bailey's death, was a debt of his estate and should be paid by it, which we understand was done. The agreement of C. W. Bailey and Bailey, Banks Biddle Co. provided for the termination of the agreement by either party giving to the other six months' notice in writing prior to March 1st or September 1st in any year. No written notice was given, but that seems to have been waived by the acts of the parties, and the Lawyer account was wound up as of October 1, 1923, when the assets were transferred to the company in consideration of $35,126.39 cash paid; $10,042.79, representing the inventory value of the assets, was credited to principal and $25,083.60 paid, as income, to Mrs. Collet. We are inclined to think that this was properly income earned by a capital asset of the estate, viz., the inventory and the valuable contract with Bailey, Banks Biddle Co. While all this is subject to further critical examination, we are clear there is nothing *Page 340 
in the Lawyer matter to warrant the dismissal of the trustees.
(5) The purchase of preferred stock of Bailey, Banks Biddle Co. by the estate was good business. It was authorized by the will and has been profitable. Mrs. Collet does not even suggest that it should be sold, which she should do to be consistent. This charge should be dismissed without further comment.
(6) The Haupt deal in commercial paper was reprehensible. The trustees had no legal right to do it, especially as we think it was probably a loan to Haupt secured by the commercial paper, rather than a purchase of the latter with Haupt's guarantee. This took place in March, 1923, and the notes were paid in September, 1923. The interest on the loan was paid, however, and no loss resulted. So, also, the loan to Bailey, Banks 
Biddle Co. was authorized, yet, as a temporary loan to the company, whose stock constituted practically the entire estate, it was not a devastavit, as the security was really better than that of the stock itself. The loan was repaid with interest, and, in our opinion, isolated transactions of this kind, which result in no loss to the estate, do not warrant a dismissal. Frequently trustees invest in unauthorized investments for the benefit of their cestuis que trust, and have never, to our knowledge, been dismissed where no loss has occurred.
(7) The Kind offer. This was so manifestly impossible that we do not think it necessary to discuss it in detail. Mrs. Collet does not complain because it was not accepted, but because the trustees did not "meet the man." This seems to us absurd. The proposition was in writing and spoke for itself. We think the trustees were entirely right and acted with good judgment.
(8) The sale of fifty shares Bailey, Banks Biddle Co. was, in our judgment, honestly conducted. It was proper to offer it at public sale, buy it in at less than 100, the agreed price, and then make up the difference. No possible loss or harm resulted to any one. *Page 341 
(9) The other charges are unimportant. We cannot say, in view of the doubt about the Lawyer account, that the trustees were not justified in withholding Mrs. Collet's income until they should be made secure. And, in view of the lady's sometimes overdrawing her letters of credit, the other matter complained of was not improper.
(10) The effect of the dismissal of these trustees upon the estate and also upon the business of Bailey, Banks Biddle Co. would, in our opinion, be most disastrous. The welfare of the estate is bound up in the success of the business, and the testator in his will shows that he fully realized the bond between the two.
(11) The effect of the dismissal of these trustees would probably, or at least might possibly, lead to their dismissal in the estate of Joseph T. Bailey, as it would then appear that they are unworthy of confidence in a fiduciary capacity.
(12) The petitioner was evidently prompted in the preparation of her petition by Miss Bitner, an employee who was discharged in April, 1925, who admitted her hostility to Hilsee. If, then, Miss Bitner, with intimate knowledge of the affairs of the trustees and of Bailey, Banks Biddle Co., could find nothing else to complain of, it is clear to us there are no other charges.
Judges STEARNE and HELLER concur in this opinion, and, as stated above, Judge THOMPSON approved it in draft form.
The exceptions to the master's report are sustained and the petition of Emilie Bailey Collet is dismissed, at the cost of the petitioner.
Supplement to the opinion of the majority of the court, by GEST, J:
In the opinion filed by the majority of the court on March 31, 1930, it was ordered as follows: "The exceptions to the master's report are sustained and the petition of Emilie Bailey Collet is dismissed at the cost of the petitioners." Certain of the exceptions related to *Page 342 
the allowance of the master's fees and the expenses of the reference, and it seems to have been apprehended by counsel that the court in its opinion disallowed the master's fees and expenses. This was not so intended, and, to avoid any misapprehension on the subject, it is now ordered that those exceptions which were filed to the allowance of said costs and expenses are dismissed, and all others are sustained. And further that the petition filed by Emilie Bailey Collet for the removal of David E. Hilsee, Harvey Gourley and William K. Haupt is dismissed at the costs of the petitioner, said costs being fixed as follows:
Master's fees, aggregating ............. $5,000.00 Stenographer's charges ................. 333.90 ---------$5,333.90
Error assigned, inter alia, was decree, quoting it.
After full consideration of the evidence, oral arguments and opinions of the court below, we have reached the conclusion the decree should be affirmed on the opinion of Judge GEST, filed March 31, 1930, and his supplemental opinion, filed later, except as to the portion of those opinions placing all costs upon petitioner Emilie Bailey Collet. That part of the order embraced in the *Page 345 
opinions referred to is hereby set aside, and in lieu thereof it is ordered that one-half of the costs be paid by the estate of Charles W. Bailey, deceased, one-fourth by Emilie Bailey Collet, petitioner, and one-fourth by the trustees of the estate of Charles W. Bailey, deceased.
In all other respects, the opinion of Judge GEST is adopted by this court, and the decree affirmed for the reasons set forth in that opinion.