[Civ. No. 8293.   Third Dist.   Nov. 10, 1953.]

NORA E. STUBBS, as Trustee, etc., Appellant, v.
LYGIA S. JONES et al., Respondents.

Aaron Turner, John Felton Turner, Lovett K. Fraser and
Bruce B. Bruchler for Appellant.

H. G. Crawford for Respondents.

VAN DYKE, P. J.—Plaintiff, as trustee of an express
trust, brought this action against other beneficiaries of the
trust to have it declared that she, as such trustee, was author-

ized to sell and convey land. From an adverse judgment she appeals.

On November 14, 1938, John L. Stubbs was the owner of all the outstanding stock of Stubbs Company, Ltd., a corporation. On that day he executed a trust indenture, the interpretation of which was the subject of this action. So far as material here the document contains the following recitals: The original and sustained purpose of the organization of said corporation had been to place title therein to the lands of the trustor and his brother, in order, through corporate instrumentality, to subdivide, develop and sell the land and convert it into cash for the benefit of the two men, each of whom in the beginning owned one-half the corporate stock. It had never been the purpose nor the practice of the corporation to use the proceeds of such sales to engage in business other than the carrying out of the original purpose and to ultimately distribute to its stockholders all principal and profit derived from such sales. The trustor, before executing the trust indenture, had purchased all of the stock formerly owned by his brother and had entered into a contract with the corporation whereby he was to be its manager during his lifetime at a salary to be fixed from time to time by the board of directors. Also the named trustee, plaintiff herein, who was the wife of the trustor, had entered into a contract with the corporation whereby, upon the trustor's death, she would become the corporate manager during her lifetime at a salary of $150 per month. This contract, said the trustor, would assure his widow a monthly income of that amount. He declared that it was his desire to further insure and protect his widow in the receipt thereof ''against any and all possible contingencies'' and that he believed that in view of his sole ownership of all the issued stock of the corporation the subject trust would further promote such purposes. Having made these recitals, the trustor declared that he established a trust in all the shares of stock of the corporation. He made the following additional declarations: That he transferred to plaintiff as trustee all of said shares to be held in trust for the uses and purposes declared by the trust instrument; that she would as trustee, have, hold, manage and control the trust property, and receive the dividends, rents, issues, profits, proceeds and income therefrom; that, during the trustor's lifetime, she would pay over to him the whole of said net income. Upon his death she would pay to herself, as beneficiary of the

trust, and for her lifetime, the sum of $1,800 per year in monthly or quarter-yearly installments, less, however, any sum she might have received from the corporation through her contract of management for services rendered. If from that source, however, she did not receive the full management fee, then, as trustee, she was to pay to herself out of the trust property any sum necessary to make up the unpaid balance. If the net income from the trust property, plus her contract earnings, exceeded $1,800 a year, then the trustee was to divide the excess, share and share alike, between herself and the trustor's four daughters, each of the five to receive one-fifth. The trust was to continue during the lifetime of the trustor and his wife. The trustor reserved the right to revoke the trust, to appoint another trustee, to change the trust, to withdraw all or any of the trust property and to add other property. When both the trustor and his wife had died the trust was to terminate and its property was to be divided equally among the four daughters. The trustor expressly authorized the trustee during the continuance of the trust to have, hold, manage and control the trust as in her judgment and discretion seemed best.

By her complaint the trustee pleaded the trust indenture, by exhibit; alleged that the trustor had died and that upon his death the corporation still owned the remainder of the property, title to which had been placed in it when the brothers incorporated it and that the stock shares remained in the trust; that the trustor through the board of directors had controlled and directed the corporate business while he had lived; that the property had been subdivided into lots and many of the lots had been sold and that while the trustor lived this course of business had been followed, he continuing in this way to convert the corporate assets into cash which was then paid out and distributed, both principal and income. She alleged that upon the trustor's death she had become the manager of the corporation, pursuant to the alleged contract, and that the corporation continued its said activities until its dissolution. Plaintiff further alleged that about November 20, 1950, she, as the holder of all of the outstanding stock, had instituted proceedings to dissolve and wind up the corporation and that prior to January 1, 1951, these proceedings had been completed and the corporation had been completely liquidated, wound up and dissolved, its entire assets having in the process been conveyed to her in trust and as owner and holder of the outstanding stock. The

beneficiary defendants denied these latter allegations concerning the dissolution, the winding up and the conveyance of the assets of the corporation. Plaintiff alleged that a controversy had arisen between herself and the other beneficiaries as to her rights and powers under the trust under the circumstances alleged; that she contended she had full right and power, and that it was her duty, as trustee, to continue the liquidation and conversion of the estate into cash and to continue to pay out and distribute the same as directed in the trust indenture, in short, to do the same things which had been accomplished through the instrumentality of the corporation. She alleged the beneficiaries controverted her assertions as to such powers and duties, and that as a consequence she was unable to operate or develop the property of the trust estate, subdivide it or enter into contracts for its sale or execute deeds conveying title thereto to purchasers or make any of the payments by the trust agreement directed to be made. She further alleged the trust estate was without funds to pay taxes or to pay the necessary expenses of management, maintenance, care and upkeep and meet the demands which the trustor laid upon the trustee through his trust or to borrow money for any such purposes, with the result that the trust estate was in danger of being lost. Thus the issues made by the pleadings centered around the trustee's contentions that she had dissolved the corporation and that it no longer existed; that she had, as sole stockholder, and by conveyance to her as such, succeeded to all of the assets of the corporation and that she, therefore, had power to accomplish by herself as trustee those things which had been accomplished theretofore through the instrumentality of the corporation while it existed.

At the trial evidence was introduced to show that in form at least all of the steps necessary to wind up and dissolve a corporation pursuant to the Corporations Code had been taken, including the execution and filing with the Secretary of State and in the proper county clerk's office of the final certificate that the corporation had been wound up and dissolved. In evidence also was the deed of the corporation conveying all its assets to plaintiff as trustee under the trust. It was contended by the beneficiaries, however, that the preservation and use of the corporation in the conversion of its assets into cash and their distribution to its stockholder was an essential part of the trustor's scheme and that the trustee, in bringing about the dissolution of the corporation and the

transfer to her of its assets in kind, had exceeded her powers and breached her obligations.

The trial court found that the plaintiff had controlled and directed the business and affairs of the corporation through its board of directors which she, as trustee, had caused to be elected until its purported dissolution; that the other beneficiaries had never consented to the dissolution of the corporation or the transfer of its assets in kind to the trustee; that without their consent the plaintiff had instituted the proceedings for dissolution and winding up; that said corporation had been purportedly wound up and dissolved and its entire assets purportedly conveyed in kind to the trustee as owner of the entire outstanding corporation stock with the purpose, said the court, on the part of the trustee of enabling her to carry on the business theretofore carried on by the corporation, including the subdivision, sale and conveyance to purchasers of the real property involved; that the plaintiff as trustee had had no right or power to operate or develop the property or to subdivide, sell or convey the same; that ''there is no property in the Trust Estate except the shares of stock'' of the corporation and dividends received therefrom; that, in effect, the corporation had not been dissolved nor its property transferred in kind to the trustee. As conclusions of law from these findings the court found that the proposed dissolution of the corporation had been void and of no effect, and that the purported conveyance was likewise void. Judgment pursuant to these conclusions of law was entered and therefrom the plaintiff trustee has appealed.

The creation of corporations and their winding up and dissolution are exclusively legislative functions over which the courts have no control so long as the statutory requirements are met. ''The dissolution of corporations is a peculiar function which resides in the legislature and is conferred upon courts only by explicit legislative authority.'' (16 Fletcher, Cyclopedia of Corporations, perm. ed., § 8097; *Neall* v. *Hill,* 16 Cal. 145 [76 Am.Dec. 508]; *Delaney Producing & Refining Co.* v. *Crystal Petroleum Products Co.,* 88 Cal.App. 784, 787 [264 P. 521].) Says the same author (§ 8022): ''The general rule is that where a statute confers power on a majority, or a certain per cent, of the stockholders to dissolve, the right is absolute, so far as the motives of the majority are concerned, in the absence of actual fraud, and not subject to judicial review on behalf of minority stockholders.''

■ The pleadings here put in issue the naked power of the trustee, as owner of all the outstanding stock of the corporation, to give her consent to the dissolution of the corporation and through the corporate officers to carry out and to complete that dissolution. No fraud is charged and the record contains no evidence of any fraudulent activity upon the part of the trustee. If we assume for a moment that by the trust indenture it was contemplated, or even required, that in the administration of her trust the trustee was obligated to continue the plan of operation followed by the trustor up to the time of his death, that is, the liquidation of the corporate assets through the medium of the corporation, it still remains true that, so far as the corporation and its affairs were concerned, the trustee, as the holder of the stock, had the statutory power to consent to its dissolution; and if thereafter the corporation was regularly, pursuant to the statutory provisions, wound up and dissolved, and its property distributed in kind to its stockholder, then, notwithstanding the trustee may have been involved in a breach of her duties as such yet the dissolution of the corporation was achieved. The statutes lay down no conditions for the dissolution of corporations other than that the specific statutory requirements be met, and they declare that when that has been done and when winding up has been completed, and the certificate to that effect has been filed where required, the "corporate existence shall cease." (Corp. Code, § 5201.)

■ When a corporation has been wound up and dissolved and following the statutory scheme therefor, has surrendered its franchise, it ceases to exist. "According to the principles of the common law, a corporation which has been legally dissolved is dead. It no longer enjoys an existence for any purpose. The necessary effect of such death is not different from the death of a natural person." (16 Fletcher, *supra*, § 8113; *Crossman* v. *Vivienda Water Co.*, 150 Cal. 575 [89 P. 335]; *North Hollywood Mtge. Co.* v. *North American Bond & Mtge. Co.*, 137 Cal.App. 180 [30 P.2d 446]; *Sharp* v. *Eagle Lake Lbr. Co.*, 60 Cal.App. 386 [212 P. 933]; *Nezik* v. *Cole*, 43 Cal.App. 130 [184 P. 523].) The court's findings as to the total invalidity of the dissolution proceedings were in reality conclusions of law. The evidence was without dispute that appellant, acting as a stockholder, and the officers of the corporation, took all action required to dissolve the corporation. The legal conclusion to be drawn therefrom, therefore, notwithstanding the assumed interpretation of the trust

indenture, was that the corporation no longer existed. This makes necessary a reversal of the judgment appealed from.

It is apparent, and as to this the parties do not appear to be in dispute, that the main and underlying purpose of the trustor was that the land held by the corporation should be sold, converted into cash and the proceeds of such conversion distributed to the appellant in trust. Whether this was to be accomplished through the instrumentality of the corporation or by other means, it was the purpose, and to all intents and purposes the express command of the trustor, that this ultimate result be accomplished. When it has been done, the trust estate will consist, not of the stock, which will by such action have become worthless, but of the proceeds derived from the sale of the lands. Appellant is still the trustee. As such trustee she is still charged with carrying out this main purpose of selling the land, converting it into cash, and paying the cash into the trust fund. Of course being charged with this duty she is armed with all power necessary to its discharge. If because of her alleged violation of her obligations as trustee, the respondent beneficiaries should ask of a court of equity that she be ousted from her office and if such ouster should be decreed, the court, in the exercise of its general supervisory powers over trusts, would appoint a successor trustee. That trustee, in turn, would be charged with the duty of carrying out, by whatever means and methods were open, the plan and purpose of the trustor that the lands be sold. In saying this we, of course, do not hold that the trustee has in fact, upon a proper interpretation of the trust indenture, violated her fiduciary obligations by bringing about the dissolution of the corporation. It is unnecessary to so decide. It is unnecessary also to discuss what action, if any, would be taken by a court of equity in the way, for example, of ordering the trustee to bring about the creation of a new corporation to serve in the same way in the disposition of the lands as the dissolved corporation was serving. These matters were not at issue in the trial court. As a matter of law, upon the proof of dissolution of the corporation, and of the distribution of corporate assets in kind to appellant, she received and held the same as trustee upon the same trusts whereunder she had held the stock; and until and unless a beneficiary by appropriate action shall have sought and received in a court of equity a decree setting up some regulatory device to control the sale of the lands, the appellant trustee has and ought to have full power to sell them, for only by so doing can her continuing fiduciary

duties under the trust indenture be performed. In this action a court of equity has not been asked to oust the trustee or to set up substitutional controls over the sale of the lands. Respondents have based their contentions that the trustee has no power of sale solely upon the proposition that by reason of the alleged total invalidity of the dissolution proceedings the corporation still exists and therefore still owns the land, in which case, of course, the trustee, not having the title, could not sell or convey. These contentions being unsustained and no alternative relief having been asked, there is no good reason why this litigation should not be ended here by reversing the judgment appealed from and directing the court below to enter judgment that the trustee has the power and is under the duty of continuing, as a trustee, to effectuate the plan and purpose of the trustor by selling the lands, converting them into cash, and receiving the proceeds into the trust. It is, accordingly, so ordered.

Peek, J., and Schottky, J., concurred.