[Civ. No. 8568.    Third Dist.    Oct. 24, 1955.]

LYGIA S. JONES et al., Appellants, v. NORA E. STUBBS, as Trustee, etc., Respondent.

H. G. Crawford and Phil N. Crawford for Appellants.

Aaron Turner, John Felton Turner, Lovett K. Fraser and Bruce B. Bruchler for Respondent.

SCHOTTKY, J.—Plaintiffs and appellants, the three surviving daughters of John L. Stubbs—a fourth daughter was deceased—commenced an equitable action against defendant and respondent, Nora E. Stubbs, who was his widow and the trustee of the trust created by him. In said action plaintiffs sought an accounting of the trust, removal of the trustee, an accounting of the affairs of the corporation owned by the trust, and an adjudication of the amount of the personal liability of the trustee. The four daughters and the widow were beneficiaries of the income under the trust and the daughters were the remaindermen. Following a trial the court found that the trustee had fully accounted to the beneficiaries and that there was no cause for her removal as trustee, and

judgment was entered in favor of defendant that plaintiffs take nothing and defendant recover costs, and that defendant pay a $2,500 attorney's fee from the trust estate.

Plaintiffs have appealed from the judgment and their principal contention is that the "trustee violated her trust duties in five major instances during the five years of her stewardship, indicating by all violations that she is disrespect-fully and wholly ignorant of the duty of strict compliance with legal procedures her trust and the law impose on her and therefore should be removed as trustee."

Before discussing the contentions of appellants we shall summarize the evidence as shown by the record.

In 1938, by written agreement with his wife, defendant here, John L. Stubbs created a revocable trust with his wife as trustee to whom he conveyed 500 shares of stock of Stubbs Company, Ltd. These shares of stock constituted most of the estate of Mr. Stubbs and were his separate property. He left a will by which defendant was appointed executrix, but no property was disposed of.

By way of recitals in the trust instrument, the following was set forth: Stubbs was the sole owner of all issued and outstanding stock of the corporation, having bought out the interest of a brother. The corporation had been formed and wholly owned by this brother and trustor to acquire certain lands belonging to the two of them, and to sell and liquidate same by subdividing and selling and thus reducing the assets of the corporation to cash. The sole and continuous aim of the corporation always had been such that, when complete, the assets originally in land would be reduced to cash and distributed to the stockholders, both as to principal and profit; there was never a purpose to continue in business with the proceeds of the sale of the land. Shortly before execution of the trust instrument the corporation had contracted to employ trustor as manager for life and, after his death, trustee surviving, to employ trustee at a salary of $150 per month as manager, for life. The employment contract would provide the trustor's widow with an income of $150 per month for life, and the trust would further insure and protect this purpose.

The terms of the trust were as follows: For his lifetime the trustor was to receive the net income from the trust. Upon his death trustee was authorized to pay to herself for life up to $150 per month, less any compensation received from the corporation, and the excess of income to the trust over

and above monthly payments to trustee was to be distributed in equal shares to the trustor's widow and his four daughters (by a previous marriage), with the right of representation to children of a deceased daughter. Upon death of both trustor and trustee, the trust estate was to be divided among the four daughters in equal shares or their issue by representation. Trustee was "vested with sole discretion and power to determine, for any and all purposes of this trust, what shall constitute principal of the trust estate, gross income therefrom, and net income available for distribution under the terms of this trust," and trustee was given the power to have, hold, manage and control the trust estate as in her judgment and discretion seemed best. Provision was made to pay his expenses of last illness and funeral from the trust if his estate was insufficient.

On April 26, 1946, trustor John L. Stubbs died, and during his lifetime the trust had never been revoked or modified. In March of 1951 one of the beneficiaries, Colleen Born, died, but the court specifically said it made no finding as to the succession to her interest because it was immaterial to the action as presented. Trustee-widow Nora E. Stubbs was appointed executrix of his estate and her letters are still in force. She was immediately appointed manager of the corporation, and also she was apparently already a director of the corporation, in both of which capacities she continued until dissolution of the corporation in 1950. On December 28, 1946, the corporation, on the initiative of Mrs. Stubbs, ordered $21,000 income held by the corporation transferred to the estate of Mr. Stubbs as accrued net income at the time of his death and payable to him under the trust. But it was shown that of this $21,000, $5,000 was first transferred on July 29, 1946, and $16,000 was transferred on December 31, 1946. This was done on the advice of Mrs. Stubbs' attorney, Mr. Fraser, who was attorney for the corporation and for the estate. It was also done because of the written opinion of an inheritance tax attorney with the State Controller's office that this $21,000 constituted part of the estate of the decedent. This opinion was given in November, 1946, but on March 12, 1947, this same attorney gave a different view, to wit: the $21,000 was an asset of the corporation and not part of the probate estate. Thereupon, but not until July 3, 1947, Mrs. Stubbs transferred the $21,000 back to the corporation, and on July 9, 1947, the corporation declared it a dividend, it was paid to the trust, and Mrs. Stubbs distributed it to the beneficiaries.

In December, 1950, in order to save future corporation taxes, a saving estimated to be some $50,000 to $75,000, trustee as sole stockholder consented to the dissolution of the corporation, and in exchange for transfer to her of all corporate assets surrendered the capital stock. In December, 1950, the corporation dissolution was accomplished and trustee held all the assets. This resulted in litigation filed February 28, 1951, *Stubbs* v. *Jones* (3 Civ. 8293; 1953), 121 Cal.App. 2d 218 [263 P.2d 100], an action for declaratory relief in which trustee sought permission to sell land, in which this court held that dissolution of the corporation was effected by full compliance with the statutory requirements therefor, and that after all assets of the corporation had been transferred to her the trustee had the power and duty to carry out the purposes of the trust by selling the lands and placing the proceeds in the trust estate, in the same fashion as the corporation before had sold the lands held by it and distributed the proceeds to the trust as stockholder. The court did not pass on the question of whether the dissolution of the corporation was in violation of the trust since that issue was not before it. This dissolution had been done with the consent of beneficiaries Born and Campbell, but without the consent of the other two daughters.

On July 23, 1947, the board of directors of the corporation passed a resolution authorizing the transfer of two lots held by the corporation to Mrs. Stubbs. She was then the president, a member of the board of directors and manager of the corporation, but she did not vote on this resolution, although she presided at the meeting. A similar sale to another director, Hazel Pluth, was also authorized at this time. There was evidence to show that this sale to Mrs. Stubbs was pursuant to a contract entered into by her after Mr. Stubbs' death. There was also evidence that the considerations for these sales were fair and adequate and based upon listings and prices prepared by Mr. Stubbs before he died.

Mrs. Stubbs as trustee received very substantial sums of money in 1946, 1947, 1948 and 1949. She filed no federal fiduciary income tax returns from date of Mr. Stubbs' death through 1951 and filed no state fiduciary returns for 1946, 1947 and 1948. A state return was filed for 1949. No claim for taxes, interest or penalties was made by the federal or state governments, but there was considerable correspondence about the subject, and a demand for a state return was made by letter. The trustee's excuse for failure to file was that it

could not be, and had not yet been, determined what was taxable profit, if any, and her attorneys had conferred with state tax officials on the matter without coming to any conclusion.

Mrs. Stubbs, as trustee, had no books of account and she never furnished the beneficiaries with any statement of the receipts and disbursements of the trust. The corporation had an accountant who kept its account books from information furnished him by the secretary of the corporation. To various requests from the beneficiaries for information about the trust, reference was made to the accountant, who was instructed to have the books available and to allow the beneficiaries to examine them. In January, 1952, plaintiffs' auditor examined the corporation books. Apparently the opportunity to examine these corporate books was never refused, and once a year, 1946 through 1950, some form of statement or balance sheet was mailed to each beneficiary. These did not appear, however, to be very complete. Plaintiffs point out that Mrs. Stubbs indicated she was not capable of giving book information, when asked for same, but always made reference to the accountant. Plaintiffs further point out that the payments made by defendant for federal estate and state inheritance taxes, made for the benefit of the trust, were shown on the books as a transfer from the corporate funds to the estate funds and then from the estate to the tax collector. One payment of such taxes was made from the corporation to the tax collector directly. Plaintiff Lygia Jones, one of the daughters, testified she had asked Mrs. Stubbs as to the fee paid to one McFarland, a tax attorney in San Francisco, hired in connection with the dissolution of the corporation, but had never had an answer. She further testified that when she asked why further distributions from the trust were not being made, Mrs. Stubbs referred her to her attorney and he in turn said it was Mrs. Stubbs who ran things.

When, in April, 1946, defendant became corporation manager, the corporate balance sheet (Def. Ex. F) contained an account receivable for Clearlake Oaks Water Company of $5,393.06, and by December 28, 1950, the corporate balance sheet showed this to be $8,628.75. (Def. Ex. J.) The court in its memorandum of opinion commented on the paucity of evidence in this connection and suggested the trustee petition for instructions in regard to these advancements to the water company. There was no evidence to indicate any business reason for these advancements.

Trial was in July, 1952, at which time defendant testified there was then about $32,000 in cash in the trust. The last

distribution was made in 1949, leaving a balance after such distribution of about $16,000 in the corporation according to the balance sheet. (Def. Ex. J.) Similar evidence showed a trust cash balance of about $30,000 for 1950 for the corporation, and about $36,000 by the end of 1951. Shortly before March, 1951, plaintiff Beryle Milford borrowed $1,000 on a 6 per cent note from defendant as trustee, and shortly thereafter plaintiff Lygia Stubbs borrowed $500 on a 6 per cent note from defendant as trustee. There were also other notes receivable shown on the balance sheets of the corporation. But there is no other evidence in the record, by way of either testimony or exhibits, to show investment of the cash funds in the trust for the several years mentioned since 1949 or their use in trust business.

On March 27, 1947, the corporation declared a dividend of $35,000, which was immediately transferred to the estate account of Nora E. Stubbs, and from this, $33,000 was, on the same day, paid to the Federal Collector of Internal Revenue for estate taxes on the estate of John L. Stubbs. The $2,000 balance was transferred to the account of defendant as trustee on June 25, *1951*. Defendant, when this $35,000 was first transferred, did so on advice of her attorney and thought at the time that $33,000 might pay the tax in full. No interest was drawn by the $2,000 while in the estate account.

Prior to the year 1949 the corporation, as part of its orchard operations, owned and operated a huller and dryer for walnuts and almonds, and had rented out its facilities to outsiders as well as using same for its own operations. Defendant testified that after 1947 she stopped this renting practice because the corporation needed all facilities for processing and storing its own crop of prunes, previous renting had caused part of the corporation's fruit to be sent outside to be processed, and this resulted in unnecessary expense. Plaintiffs put in contrary testimony by the former manager of the corporation's orchard operations, Jack Milford, husband of plaintiff Beryle Milford, and by the latter herself, that only a lack of *storage* space caused sending of the *prune* crop outside, the hulling and drying shed being used as makeshift storage, but that renting the facilities for hulling and drying almonds and walnuts did not interfere with the corporation's own operations because the nut crops were processed before the prune harvest, and that such renting was profitable to the corporation. He said further that except for 1947, from 1944 to 1948 the corporation handled all of its own fruit and nut crops.

Minutes of the corporation of August 22, 1948, show a report by defendant of an altercation with plaintiff Beryle Milford and direction to the corporation attorney to write and notify her to remain away from the corporation office, and also direction to the attorney to write Mrs. Milford's husband concerning this matter and also concerning business matters in a manner critical of his work as manager of the corporation's orchard operations. As a result of this altercation defendant swore to a battery complaint against plaintiff Milford which was filed in a local justice's court.

Appellants first contend that the "trustee violated her trust by voluntarily assuming a position antagonistic to her trust when she transferred $21,000 from her trust estate to herself as Executrix of the Estate of John L. Stubbs and should be held liable for legal interest on said money during the period of transfer." As hereinbefore set forth, respondent trustee in the transfer of said money relied upon the advice of her counsel and also upon the opinion of a state inheritance tax attorney. The trial court found that she was acting in good faith, stating in its memorandum opinion: "I find myself unable to hold Mrs. Stubbs responsible for transferring this money from the corporation to the Stubbs estate under the circumstances. I must hold, and do hold, that she was entitled to rely upon the advice of her attorney, buttressed as it was by the opinion of other experts, including the comptroller's office itself."

Appellants contend also that "by failing to file fiduciary income tax returns for all years but one during which respondent acted as trustee, she violated her duty of strict compliance with tax regulations causing loss to the trust estate." The trial court found against appellants' allegations that respondent's failure to file these returns would result in loss to the trust estate, the memorandum opinion stating: "The evidence discloses that she did not file returns for 1946, 1947, or 1948 in time, but it does not appear from any evidence produced that any interest or penalties have been assessed or will be assessed for such failure. It is not without the realms of possibility that negotiations are being had with the State and Federal Governments, which conclusion is readily inferable from the evidence; and it is furthermore not without the pale of reasonable conclusion that a saving will result through the corporation and trust by reason of such negotiations."

Appellants contend further that the "trustee violated her trust duty to obey declarations of the trust and fulfill the purpose of the trust when she voluntarily dissolved the corpora-

tion without consent of all the beneficiaries.'' As hereinbefore set forth, the object of respondent in moving to dissolve the corporation was to save a large amount of corporation taxes, and the court found that the respondent in good faith believed that she had the consent of appellants to the dissolution of the corporation and that such dissolution would effect a tax saving of from $50,000 to $75,000, and further found that respondent trustee brought the action for declaratory relief solely for the purpose of determining her rights and duties as trustee. In that action the trial court held that the dissolution of the corporation was void and of no effect, but upon appeal this court held (*Stubbs* v. *Jones*, 121 Cal.App.2d 218 [263 P.2d 100]), that the dissolution of the corporation had been accomplished. Our decision came after the trial of the instant case and after the findings were filed in which the trial court, in conformity with the decision of the superior court in the declaratory relief action, found that the dissolution of the corporation was of no effect. In view of our decision in the declaratory relief action the dissolution of the corporation and the cancellation of the stock must be considered valid. ■ Appellants argue that the trial court erred in finding that respondent was acting in good faith and for the benefit of the trust in dissolving the corporation, but we believe that that issue was one of fact for the court to determine. As stated by the court in its memorandum opinion: ''In addition thereto the evidence stands uncontradicted that in taking said action the beneficiaries would have been saved some fifty thousand or seventy-five thousand dollars in taxes. Such proposition, of course, cannot be overlooked in determining whether she was or was not acting in good faith.''

Appellants' next contention is that the ''trustee's failure to keep separate books of account for the trust, and her failure to account to her beneficiaries at reasonable times, caused beneficiaries to file a law suit to get an accounting from trustee causing loss to the trust and the beneficiaries for which trustee should be removed.'' The court found that the allegations in appellants' complaint that respondent had never accounted to appellants for all receipts and disbursements of the trust were untrue, and found further that as such trustee:

''. . . she has received One Hundred Eight Thousand, One Hundred Thirty-one and 16/100 Dollars ($108,131.16) and has disbursed One Hundred Eight Thousand, One Hundred Thirty-one and 16/100 Dollars ($108,131.16) and that she has

not profited one penny from any of her transactions as such Trustee.

"That the defendant, as such Trustee, has at all times kept complete and correct records of said Trust and of said corporation, Stubbs Company, Ltd., and of all her transactions as such Trustee; that the plaintiffs and said Colleen Born, who is mentioned in Paragraph VI of the complaint, have at all times had the right to inspect said books and records and said books and records have, in fact, been fully inspected and audited by an auditor selected by the said plaintiffs and have been and still are open for inspection and audit by said plaintiffs at all reasonable times."

While it is no doubt true that the manner of keeping the books of the corporation and of the trustee could be improved upon, we cannot say upon the record here that the evidence upon that issue compels a finding that the trustee should be removed. We think it was for the trial court to determine whether or not there had been a sufficient accounting by respondent trustee. The view of the trial court on this phase of the matter is well expressed in its memorandum opinion as follows: ". . . while an accounting is not being ordered in this case by reason of the fact that the plaintiffs have full access to the books of the corporation and the trust, nevertheless, I doubt not that Mrs. Stubbs, being the sensible woman she appears to be, will not hereafter let herself open to litigation arising out of any claim that she has not fully and properly rendered accounts of her stewardship to the other interested parties."

Appellants contend that the "trustee violated her trust duty not to sell to herself or her agents any of the trust property without the consent of the beneficiaries when she and her agent purchased lots from the corporation."

As hereinbefore stated, a sale of two lots owned by the corporation was made to respondent not long after the death of Mr. Stubbs, the trustor. This sale was authorized by the directors but respondent did not vote on the resolution authorizing the sale. There was evidence that the price paid for the lots was fair and adequate and based upon listings and prices prepared by the trustor before his death. In view of the close connection between the corporation and the trust, it is no doubt true that the sale was improper, but we believe that it was a matter to be determined by the trial court whether or not the transaction in question was such as to require the removal of the trustee.

Appellants contend further that "The evidence indicates continued hostility between trustee and her beneficiaries which has influenced decisions of trustee and caused trustee to continually disregard her duties to properly account to her beneficiaries." As to this issue the court stated in its memorandum opinion: "The next allegation is that there exists hostility and ill feeling between Nora E. Stubbs and plaintiffs and she has been and will be controlled by such hostility. The answer denies such hostility or that she will be controlled by such. The evidence discloses no particular evidence of hostility except as to Beryle Stubbs Milford and that was an incident which occurred four years ago. There is no evidence of any present hostility nor that such hostility controlled her action to the detriment of plaintiffs. In any event, her rights and responsibilities are definitely fixed by the trust agreement so far as any benefits to her are concerned." We are satisfied that the record supports the court's finding that appellants' allegations of hostility are untrue.

Appellants contend also that "All of the breaches of trust by trustee indicate lack of skill and business acumen and have become so numerous that trustee should be removed." The trial court found against appellants' allegation that respondent trustee did not have the necessary business skill and acumen to conduct the business of the trust and of the corporation. The court stated in its memorandum opinion: "In my opinion these allegations of the complaint have not been proved. Mrs. Stubbs appears to be a highly intelligent woman with a remarkable memory for details. True, as a business woman, she probably has made mistakes, and errors of judgment, but who can that not be said of, whether it be business man or business woman? I can see no such serious errors of judgment that would justify removing her as trustee." The record supports both the statement and the finding of the trial court.

Appellants contend finally that even though each alleged separate breach of trust may not be sufficient ground for removal of the respondent trustee, "the entire history of respondent's activities as trustee, considered as a whole, offers more than sufficient grounds for removal." In support of such contention appellants set forth well-settled rules dealing with the obligations and duties of trustees. They quote from the case of *Overell* v. *Overell,* 78 Cal.App. 251, where the court said at page 256 [248 P. 310]:

"In all matters connected with his trust a trustee is bound

to act in the highest good faith toward his beneficiary and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. (Civ. Code, § 2228.) As long as the confidential relation lasts the trustee or other fiduciary owes an undivided duty to his beneficiary, and cannot place himself in any other position which would subject him to conflicting duties, or expose him to the temptation of acting contrary to the best interests of his original *cestui que trust*. This prohibition operates irrespective of the good faith or bad faith of such dealing. (3 Pomeroy Equity Jurisprudence, § 1077.)''

Appellants also quote the following from *Moore* v. *Bowes,* 8 Cal.2d 162, at page 165 [64 P.2d 423]:

''. . . Trustees are subject to removal whenever, as here, it appears that their private interests conflict with their trust duties, and when it also appears, as here, that trust property has been appropriated to their own use, whether or not they purported to act honestly under an assumption that they would become entitled to it and the money was returned when the contrary proved to be the fact. The purpose of removal is not the infliction of a penalty for past behavior, but is the preservation of the trust property. (*Overell* v. *Overell,* 78 Cal.App. 251, 257 [248 P. 310]; *Barbour* v. *Weld,* 201 Mass. 513 [87 N.E. 909]; 3 Bogert on Trusts and Trustees, (1935 ed.) p. 1672.)''

There can be no doubt as to the soundness of the legal principles enunciated in the above cited cases. However, it must be borne in mind that in each of those cases the trial court had made an order removing the trustee, and the appeal was from said order, whereas in the instant case the appeal is from an order refusing to remove the trustee. If the court had ordered the removal of respondent trustee we are satisfied that there is sufficient evidence in the record to support such an order. ■ But the court did not find in accordance with appellants' allegations, and the question with which we are confronted upon the appeal is: Can it be held upon the record before us that the court abused its discretion in refusing to remove the respondent trustee?

As stated in *Estate of Brown,* 22 Cal.App.2d 480, at page 485 [71 P.2d 345]:

''The appellants rely particularly on the case of *Overell* v. *Overell,* 78 Cal.App. 251 [248 P. 310], and cases therein cited. It is well settled by that case, and many others, that a trustee must act in the highest good faith toward his bene-

ficiary and must not occupy a position where his interests conflict with those of the beneficiary or where he is exposed to the temptation of acting contrary to the best interests of the beneficiary. In that case the removal of a single trustee was approved where he had used certain corporation stock, being the *corpus* of the trust estate, to control that corporation and where in important respects he had used the control thus secured for his own interest and against the interest of the beneficiary. Not only are the facts of that case considerably different from those with which we are now concerned, but a number of other considerations are here involved. An original appointment is here attacked and not a removal, a number of things require consideration in determining whether conflicting interests appear, the appointment does not carry control of the trust estate, and the appointment was desired by the testator with a full knowledge of all of the essential facts. A court has a large discretion in such matters and the real question is not whether the court would have been justified in refusing to make these appointments, but is whether a disqualification so clearly appears that it must be said that the court abused its discretion.

"In *Cowen's Estate,* 148 Misc. 35 [265 N.Y.S. 40], the court says: 'Petitioner contends that by reason of such facts and of the possibilities involved, the personal interest of the respondents is so inherently antagonistic to their duties as trustees as to render them removable under the doctrine of *Pyle* v. *Pyle,* 137 App.Div. 568 [122 N.Y.S. 256], and other cases cited by the petitioner under this head. The rule of these cases does not apply. The position in which these respondents are now found is the position in which they were placed by the testator himself.'

"In *Bailey's Estate,* 306 Pa. 344 [159 A. 549], the court said: 'It is a serious matter to dismiss trustees appointed by will; much more should be shown by those who wish them dismissed than would be the case where the trustees are appointed by the court.'

"In Restatement of the Law on Trusts, section 107, it is said: 'The court will less readily remove a trustee named by the settlor than a trustee appointed by the court or by a third person who is by the terms of the trust authorized to appoint a trustee.' "

And as stated in *Estate* of *Keyston,* 102 Cal.App.2d 223, at page 227 [227 P.2d 17]:

"A trustee is bound to act in the highest good faith toward

his beneficiary (*Churchill* v. *Peters,* 57 Cal.App.2d 521, 531 [134 P.2d 841]), and the question as to whether he does so act is one of fact for the trial court. A trustee may be removed when it appears that his private interests conflict with his trust duties. (*Moore* v. *Bowes,* 8 Cal.2d 162, 165 [64 P.2d 423].) Whether a trustee should be removed, however, is a matter within the sound discretion of the trial court and is ' "dependent upon the circumstances of each particular case." ' (*Estate of Brown,* 22 Cal.App.2d 480, 486 [71 P.2d 345].)"

The trial of the instant case occupied four days and the reporter's transcript contains 400 pages. In addition, there were numerous exhibits. It is apparent from the able and exhaustive memorandum opinion filed by the trial court that the court gave careful consideration to the matter. The court no doubt attached considerable weight to the fact that Mr. Stubbs, the trustor, appointed respondent trustee, the court stating:

"In the first place, it is clear that Mr. Stubbs wanted his widow to be manager of the corporation and trustee of the trust and to have her $150.00 a month, plus her 1/5th of the dividends, secured to her. His wishes should be respected and upheld, if reasonably possible."

We believe that under the facts and circumstances as shown by the record the court was justified in concluding, as it did conclude, that respondent trustee had not acted in a manner detrimental to the trust or to the beneficiaries, that in the language of the court, "she has not received one penny, in all these proceedings, that she was not entitled to"; and that "conceding Mrs. Stubbs may have erred at times, I think on the whole she has done a pretty good job as trustee of this trust." It was for the trial court to weigh the testimony of the witnesses, and to determine as a court of equity whether the acts of respondent trustee were such as to require her removal as trustee. The court concluded that respondent had acted in good faith, that she was endeavoring to carry out the wishes of her deceased husband, the trustor, and that none of her acts was of a nature as to justify, much less require, the court to disregard the express desire of the trustor that she should be the trustee of trust. We believe that the record supports the conclusions of the trial court as expressed in its findings and judgment.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.