Filed 12/27/21  Johnson v. Johnson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| ROSS VAN DYKE JOHNSON, As Trustee, Etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> KENT KNOX JOHNSON, <br><br> Defendant and Appellant. | C090195 <br><br> (Super. Ct. No. SP20170042) |
| CURTIS JOHNSON et al., <br><br> Petitioners and Respondents, <br><br> v. <br><br> KENT KNOX JOHNSON, <br><br> Objector and Appellant. | C090522 <br><br> (Super. Ct. No. SP20190015) |

Appellant Kent Knox Johnson and his two brothers, Curtis Johnson and Ross Van Dyke Johnson, are the surviving children of William and Felice Johnson, and the

1

beneficiaries of the Johnson Living Trust (Trust).[1] In this consolidated appeal, Kent challenges the results of two separate superior court proceedings. The first proceeding resulted in a judgment confirming a plan for distribution of the Trust's assets and an award of the Trustee's attorneys' fees. The second proceeding resulted in a decree that the brothers each owned a one-third share of certain property that was not a part of the Trust. Because Kent has failed to establish that the judgment or decree are void, or any error necessitating reversal, we will affirm the judgment and the decree.

## I. BACKGROUND

A.      *Petition to Confirm Trust Distribution Plan (C090195)*

In 2011, William and Felice amended the Trust to name William, Felice, and Kent as co-trustees, and Curtis and Ross successor trustees, in that order. After Felice died in 2012, William amended the Trust to replace Kent as co-trustee with Ross, and name Curtis and then Kent successor trustees. William died in 2016. In 2017, Ross, as Trustee, petitioned the El Dorado County Superior Court for an order confirming the trust distribution plan pursuant to Probate Code section 17200. The petition alleged that upon the death of the surviving trustor (William) and after payment of expenses, costs of administration, and claims against the estate, the balance of the estate was to be distributed by the Trustee in equal one-third shares to Ross, Kent, and Curtis. The Trust's assets consisted of several pieces of real estate, and the petition proposed a division of those assets and cash to achieve an equal distribution for each brother.

Kent opposed the Trustee's petition and filed a petition to remove Ross as trustee.

The court issued a proposed statement of decision granting the petition for approval of the distribution plan and denying Kent's petition to remove the Trustee. The court also tentatively awarded the Trustee his attorneys' fees and costs incurred in

---

[1] We will refer to the Johnsons by their first names. No disrespect is intended.

2

obtaining court approval of the distribution plan and defending against Kent's removal petition. The court explained that subsequent briefing would determine the amount of the award. After Kent filed objections and an opposition, the court adopted its proposed statement of decision as its statement of decision.

The Trustee subsequently filed an affidavit in support of his requested award of attorneys' fees and costs.

On June 18, 2019, the court entered judgment granting the petition for approval of the distribution plan, denying Kent's petition to remove the Trustee, and awarding attorneys' fees and costs to the Trustee to be charged against Kent's share of the estate in an amount to be determined after further hearing.

On July 1, 2019, Kent filed a motion for reconsideration of the judgment. The court denied the motion.

On August 9, 2019, Kent filed an appeal from the judgment.

In a September 24, 2019 order, the court awarded the Trustee $332,257 in attorneys' fees and costs and directed the clerk to insert the amount into the June 18, 2019 judgment. Kent filed a notice of appeal from this post-judgment order, which we assigned the same case number (C090195).

B.      *Petition to Determine Identity of Issue (C090522)*

In May 2019, Curtis and Ross filed a petition to determine identity of issue under Probate Code section 248. As explained in the petition, a decree of preliminary distribution had been ordered in 1958 wherein Stella Van Dyke Johnson created a life estate in certain property in South Lake Tahoe for the benefit of her son, William, with the remainder to his issue.

On July 15, 2019, Kent filed a petition for letters of special administration and a notice of petition to administer the life estate of Stella and William. On August 5, 2019, Kent filed a petition for opening estate administration pursuant to Probate Code section

3

8000, in which he argued Ross and Curtis's petition to determine identity of issue without probate was improper.

On August 7, 2019, the court decreed that Curtis, Ross, and Kent were the only issue embraced in the 1958 decree, and further decreed they each owned a one-third share of the property as tenants in common. The court denied Kent's petition for opening estate administration, explaining that it had "previously denied Kent's petition to open estate administration on July 17, 2019,"[2] and there was no need to administer his father's estate. The court dropped the petition for letters of special administration from its calendar because it was improperly noticed. On August 20, 2019, Kent filed a motion for reconsideration that the court ultimately denied. On September 20, 2019, Kent filed a notice of appeal.

At Kent's request, we consolidated his appeals.

## II. DISCUSSION

### A. *Standards for Appellate Briefs*

We begin with a few words regarding appellate briefing. Orders and judgments are presumed to be correct, and the appellant must affirmatively show error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.] Hence, conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) As the reviewing court, we will not perform an independent, unassisted review of the record in search of error or grounds to support the judgment. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522.)

---

[2] This appears to be a reference to an oral motion made at the July 17, 2019 hearing.

4

In addition, the appellant must "[s]tate each point under a separate heading or subheading summarizing the point." (Cal. Rules of Court, rule 8.204(a)(1)(B).) "This is not a mere technical requirement." (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.) It is designed so that we may be advised " 'of the exact question under consideration, instead of being compelled to extricate it from the mass.' " (*Ibid*.) "Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.) Moreover, any arguments raised or only supported by authority on reply have been waived. (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.) These rules of appellate procedure apply to Kent even though he is representing himself on appeal. (*McComber v. Wells*, *supra*, 72 Cal.App.4th at p. 523.)

B.      *The Judgment and Decree Are Not Void*

Kent contends the judgment and decree are void due to lack of jurisdiction and extrinsic fraud based on alleged issues regarding opposing counsel's corporate structure. We reject both contentions.

Kent argues the superior court had no jurisdiction to hear either the petition to confirm the Trust distribution plan or the petition to determine identity of issue because the law firm to which counsel for Ross and Curtis belongs (Alling & Jillson Ltd.) is allegedly not registered to do business in California. This argument relies on evidence Kent submitted with his August 20, 2019 motion to reconsider regarding his attempts to start probate proceedings. Kent submitted an exhibit indicating Alling & Jillson is a limited liability company organized under Nevada law. In Nevada, "[a]n LLC is typically 'created to provide a corporate-styled liability shield with pass-through tax benefits of a partnership.' [Citation.] An LLC 'combines the flexibility of a contract-based form such as a partnership and the limited liability of a state-created form such as a corporation.' [Citation.] However, '[u]nlike limited partners, LLC members do not lose their limited liability for participating in control of the business.' " (*Gardner v. Eighth*

5

*Judicial District Court* (2017) 133 Nev. 730, 733 [405 P.3d 651].) Under California law, attorneys may form an LLP or a professional corporation. (Fotenos et al., Cal. Practice Guide: Pass-Through Entities (The Rutter Group 2021) ¶¶ 2:202, 2:206.) "[B]ut the LLC form is not available" for lawyers under California law. (*Id*. at ¶ 2:205; see Corp. Code, § 17701.04, subd. (e) ["Nothing in this title shall be construed to permit a domestic or foreign limited liability company to render professional services, as defined in subdivision (a) of Section 13401 and in Section 13401.3, in this state"].) It is undisputed that the attorneys who represented Ross and Curtis are licensed to practice in California. Kent's complaint is with the structure and registration status of the law firm to which the attorneys belong. Regardless, the authority cited by Kent does not demonstrate that a complaint about the corporate structure of opposing counsel's law firm can form the basis for the reversal of a judgment or order on appeal.

Kent has similarly failed to establish that either the judgment or the decree is void due to extrinsic fraud. "Extrinsic fraud is a broad concept which covers a number of situations. 'Its essential characteristic is that it has the effect of preventing a fair adversary hearing, the aggrieved party being deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' " (*Lovato v. Santa Fe Internat. Corp*. (1984) 151 Cal.App.3d 549, 554.) The suggestion that Kent's allegations regarding opposing counsel's corporate structure meet this standard is without merit. (Cf. *Olson v. Cohen* (2003) 106 Cal.App.4th 1209, 1215 ["Incorporation is not undertaken for the protection of clients"].)

Kent has not established that the judgment or decree are void under any theory.[3]

---

[3] Kent also contends that by permitting opposing counsel to appear in El Dorado County, the superior court denied him equal protection. We may decline to address an equal protection claim when it is raised for the first time on appeal. (*Souza v. Westlands Water Dist*. (2006) 135 Cal.App.4th 879, 898-899.) Even if we exercised our discretion to address it, this claim would fail for lack of adequate argument and authority. Kent's

*C.*	*Notice of Removal of Trustee*

Kent argues Ross was not the Trustee because no evidence of personal delivery or certified receipt of mailing of a notice of removal to Kent was admitted. Kent argues this issue was preserved through his July 1, 2019 motion for reconsideration of the judgment in the Trust distribution case. The court denied that motion on the basis that it did not meet the requirements under Code of Civil Procedure section 1008. The court found the motion did not present new or different facts, circumstances, or law within the meaning of the statute and there was "an abject lack of diligence." Further, the court stated it is "not a proper vehicle at this point for raising the issue" and judgment had been entered. The court found "if this were an appropriately-brought motion, that the respondent would be estopped at this point from advancing this position anyway."

"An order denying a motion for reconsideration made pursuant to [Code of Civil Procedure section 1008,] subdivision (a) is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." (Code Civ. Proc., § 1008, subd. (g).) At the hearing on the motion, the superior court stated the motion does not specify which motion it was asking the court to reconsider. Kent argued "it applies to all motions submitted." We assume without deciding that the motion for reconsideration is appealable.

Code of Civil Procedure section 1008, subdivision (a), provides that, within 10 days after service of notice of entry of an order, a party may make a motion to reconsider "based upon new or different facts, circumstances, or law." "A party seeking

---

reference to the equal protection clause is insufficient. (See *Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 593 [claim that administrative remedy violated federal supremacy clause failed for lack of adequate argument and authority].) He has failed to provide meaningful legal analysis to support a claim that the equal protection clause actually applies to this issue. We will not hunt through state and federal law on his behalf. (*Ibid.*)

7

reconsideration also must provide a satisfactory explanation for the failure to produce the evidence at an earlier time." (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.) We review a trial court's ruling on a motion for reconsideration under the abuse of discretion standard. (*Ibid.*) Kent has failed to demonstrate the court abused its discretion in denying the motion for reconsideration based on his failure to establish new or different facts or circumstances, or his failure to provide a satisfactory explanation for not raising the same facts earlier.

D.      *Issues Relating to Appointment of a Special Co-Trustee*

In denying Kent's removal petition, the superior court explained that it rejected his central contention that it lacked jurisdiction to confirm the Trust distribution plan because the Trust required appointment of a special co-trustee. Kent raises several arguments on appeal related to this issue. First, he argues the Trustee was required to submit the dispute to a special co-trustee before filing the petition to confirm the trust distribution plan. Second, Kent contends that because the Trustee breached this duty, he was not permitted to use Trust funds for litigation. Third, Kent asserts a special co-trustee should have obtained appraisals for certain property because it was difficult to value. Fourth, Kent argues the court erred in excluding evidence relating to these claims. We reject each of these contentions.

Kent's assertions of error implicate different standards of review. We review the trial court's denial of a request to remove a trustee for abuse of discretion. (*Trolan v. Trolan* (2019) 31 Cal.App.5th 939, 957; *Jones v. Stubbs* (1955) 136 Cal.App.2d 490, 500.) " 'An abuse of discretion occurs only if the reviewing court, considering the applicable law and all of the relevant circumstances, concludes that the trial court's decision exceeds the bounds of reason and results in a miscarriage of justice.' [Citations.] In applying the abuse of discretion standard, 'we resolve all evidentiary conflicts in favor of the judgment and determine whether the court's decision " 'falls within the permissible range of options set by the legal criteria.' " ' [Citation.] We may

8

reverse only if the trial court's decision ' "exceeds the bounds of reason, all of the circumstances before it being considered." ' " (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 292-293.)

We review the trial court's factual findings under the substantial evidence standard. (*Orange Catholic Foundation v. Arvizu*, *supra*, 28 Cal.App.5th at p. 292.) "Under this standard, 'our review begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, to support the findings below.' [Citation.] 'In assessing whether any substantial evidence exists, we view the record in the light most favorable to respondents, giving them the benefit of every reasonable inference and resolving all conflicts in their favor.' [Citation.] ' "[I]t is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it." ' " (*Ibid.*) Further, "[i]t is the appellant's burden, not the court's, to identify and establish deficiencies in the evidence." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.)

The proper interpretation of a trust instrument is a question we review de novo unless there is conflicting extrinsic evidence. (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439.) "In interpreting the trust instrument, we seek the intent of the trustors as revealed in the document considered as a whole." (*Id.* at p. 1440.)

The Trust document explains "[t]he function of the Special Co-Trustee is to protect the financial resources controlled and governed by our Trust and the interests of the beneficiaries." Further, "[i]n the event a Special Co-Trustee is *needed* to act, . . . a majority of the Successor Trustees designated in Section 4 of this Article, shall have the right to designate by written instrument a Special Co-Trustee . . . ." (Italics added.) As Kent acknowledges, no special co-trustee was ever designated. The court interpreted article 3, section 9, subdivision (d)(1) of the Trust as setting forth the referenced need for one. It provides: "The value of certain property of our Trust may not be readily

9

ascertainable, for example, real estate and securities held in a closely held corporation, partnership, limited liability company or other investment or business organization . . . . Whenever our Trustee's right to determine the value of this kind of property may be self-serving or may produce a possible conflict of interest or adverse taxation issues, the Special Co-Trustee is to value the property of our Trust."[4]  The court found "the evidence clear and convincing (recognizing the standard is preponderance) that while perhaps of some complexity, none of the assets were difficult to value and Ross was never in a position whereby his actions in obtaining those valuations . . . were in the least self-serving."  Kent argues the brothers all agreed certain property leased by a grocery store was "difficult to value with large variations between appraisals."  Kent's citations to the record do not necessarily support the suggestion all the brothers agreed with him on this point.  Curtis indicated he obtained his own appraisal of the property that was for $1 million less than the appraisal Ross obtained.  Kent directs us to no further information regarding this appraisal.  Ross testified that valuing this property was "more difficult than average."  Regardless, he submitted a narrative appraisal report prepared by a licensed appraiser concluding the property was worth $8 million on the date of William's death. Substantial evidence supports the court's determination that the value of the property was readily ascertainable, and the Trustee's actions were not self-serving.  Therefore, Kent has failed to demonstrate the court erred in concluding no special co-trustee was required by article 3, section 9, subdivision (d)(1) of the Trust.

The Trust provides that, "[s]ubject to the provisions of Section 9 of Article Three, our Trustee shall have the power to commence or defend, at the expense of our Trust,

---

[4]  This provision is qualified by a preamble that provides "the Special Co-Trustee will have the authority to perform any one or more of the following functions to the extent that the discretionary authority of our Trustee to perform a function might constitute an act of self-dealing or might jeopardize the tax status of our Trust."  Kent's opening brief does not discuss the self-dealing requirement.

such litigation with respect to our Trust or any property of our Trust as our Trustee may deem advisable . . . ." One of the referenced provisions, set forth in article 3, section 9, subdivision (h) of the Trust, provides: "The Special Co-Trustee may unilaterally resolve any dispute, claim or conflict between beneficiaries, including those who have, or claim to have, a present or future interest in property, between a beneficiary and a trustee, or between trustees. Such resolution shall be binding on all parties to our Trust and shall not be subject to review. [¶] No one may file or instigate a claim in a court of law without first submitting the claim to the Special Co-Trustee for resolution . . . ." Kent argues this provision required the Trustee to submit the dispute to a special co-trustee before filing the petition to confirm the trust distribution plan, and the Trustee breached this duty by failing to do so and using trust funds for litigation. Reading the Trust as a whole, it is not clear that a trustee's petition to confirm a trust distribution plan is inherently a "claim" that requires submission to the special co-trustee. A claim is "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional," or a "demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for." (Black's Law Dict. (10th ed. 2014) p. 301, col. 2.) Even if a petition to confirm a trust distribution plan is a claim, there was no special co-trustee and the Trust does not give the Trustee the power to designate one for this (or any) purpose. In addition to concluding Kent failed to establish the predicate need for appointment of a special co-trustee, the court found "Ross went to heroic efforts to accommodate Kent and his ever-changing demands until he finally and reasonably concluded that he would never be able to satisfy Kent without a wholesale caving into those demands, regardless of their merit, and prudently sought court involvement." We are not persuaded the court abused its discretion by refusing to remove Ross as trustee or that the Trust requires that the judgment be reversed based on his alleged failure to submit the approval of the Trust distribution plan to a nonexistent special co-trustee.

11

Kent contends the court erred in excluding Exhibit R relating to Trust litigation expenses based on relevance. On appeal, he argues the ruling was prejudicial because it denied him evidence needed to support his claim that failure to elect the special co-trustee was financially harmful to the Trust. Because he has failed to demonstrate any error with respect to the trial court's conclusion that no special co-trustee was required, we agree the evidence was properly excluded in the trust distribution proceeding.

E.      *Admissibility of Exhibit Q Regarding Appraisal*

Kent argues the court in the trust distribution proceeding erred in excluding an email from an appraiser to Ross. Kent acknowledges the court's ruling was based on hearsay, but his opening brief only argues the document was relevant and offers no authority regarding hearsay. Further, he fails to direct his argument to any specific statements in the email. As such, he has failed to establish error.

F.      *Probate Code Section 248 Decree*

Kent argues the court's decree under Probate Code section 248 must be reversed because probate should have been commenced under Probate Code section 8000.[5] Relatedly, he argues he filed a proper probate petition that was improperly denied. Kent also contends the court erred in decreeing ownership. We reject each of these assertions. As previously set forth, in 1958, a court ordered a decree of preliminary distribution with respect to the estate of Stella that created a life estate in certain property for the benefit of William, with the remainder to his issue. When a decedent holds property as a life tenant with designated remainderpersons, the property interest terminates on the decedent's death and passes to the remainderpersons without the necessity of probate. (Gold et al.,

---

[5] Under Probate Code section 8000, subdivision (a), "At any time after a decedent's death, any interested person may commence proceedings for administration of the estate of the decedent by a petition to the court for an order determining the date and place of the decedent's death and for either or both of the following: [¶] (1) Appointment of a personal representative. [¶] (2) Probate of the decedent's will."

12

Cal. Civ. Practice, Probate & Trust Proceedings (Thompson Reuters 2021) § 4:32; see

Prob. Code, §§ 6600, subd. (b)(1), 13050, subd. (a)(1).)  Under Probate Code section 248,

where, as here, title to or an interest in property vests, other than by the laws of

succession, in the issue of a person without other description or the means of identifying

the persons embraced in the description, anyone interested in the property as the issue

may petition the superior court in the county in which the property is located for a decree

"determining and establishing the identity of the persons embraced in the general

description." (Prob. Code, § 248.)  The court decreed that Curtis, Ross, and Kent were

the issue embraced in the 1958 decree and were the co-owners of the property, with each

owning a one-third share of the property as tenants in common.  The contents of the

decree were proper.  We reject Kent's assertion that a decree may only determine the

identity of issue without reference to the property ownership.  The statutory scheme

contemplates the decree will mention both:  "The decree shall be prima facie evidence of

the facts determined thereby, and shall be conclusive in favor of anyone acting thereon in

good faith without notice of any conflicting interest."[6]  (Prob. Code, § 249.)  Further,

nothing in the statutory scheme requires the opening of a probate proceeding before the

filing of a petition for a decree, nor does the record indicate the opening of a probate

proceeding was otherwise required.  It is well settled that "[a] probate proceeding is

concerned with the administration of an estate, and, if there is no property, there is

nothing to administer." (14 Witkin, Summary of Cal. Law (11th ed. 2021) Wills and

Probate, § 384.)  Proof of the existence of property to be administered is a prerequisite to

the probate court's assertion of jurisdiction.  (See *Estate of Waits* (1944) 23 Cal.2d 676,

679 ["An estate must exist before an administrator can be appointed, for if there were no

---

[6] The decree is appealable.  (15 Witkin Summary of Cal. Law (11th ed. 2021) Wills and
Probate, § 767; see Prob. Code, § 1303, subd. (f).)  The denial of a request for an order
granting letters of special administration is not.  (Prob. Code, § 1303, subd. (a).)

13

estate there would be no function for the administrator to perform"]; *Estate of Daughaday* (1914) 168 Cal. 63, 69 ["no reason for the issuance of letters of administration upon her nonexistent estate"].) We therefore reject Kent's assertions of error relating to the decree and refusal to commence a probate proceeding.

G.     *Award of Attorneys' Fees*

As previously set forth, the court entered judgment granting the petition for approval of the Trust distribution plan, denying Kent's petition to remove the Trustee, and awarding attorneys' fees and costs to the Trustee in an amount to be determined. The judgment left blanks for the award of attorneys' fees and costs. After Kent filed an appeal from this judgment, the trial court awarded the Trust $332,257 in attorneys' fees and costs, and directed the clerk to insert the amount into the earlier judgment.[7] Kent contends the court erred by awarding fees for the unlawful practice of law. Relatedly, he again argues the court erred in excluding Exhibit R regarding the Trust's litigation expenses. Finally, he takes issue with the fact attorneys' fees were awarded after he filed his first notice of appeal. We reject each of these claims.

As a threshold matter, the judgment awarding attorneys' fees in an amount to be specified later was proper. (See *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 996 ["When a judgment includes an award of costs and fees, often the amount of the award is left blank for future determination"].) The superior court did not lose jurisdiction to set the amount of attorneys' fees when Kent filed a notice of appeal. (See *Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 368, superseded by statute on other grounds as stated in *Lee v. Wells Fargo Bank, N.A.* (2001) 88 Cal.App.4th 1187, 1197 ["the filing of a notice of appeal does not deprive the trial court of jurisdiction to award attorney fees as costs post

---

[7] If the clerk did so, it does not appear to be part of the record on appeal.

trial"].)  We turn now to Kent's assertions relating to the Trust's payment of Alling &
Jillson.

The superior court awarded the Trustee his attorneys' fees and costs pursuant to
Probate Code section 17211.  This statute provides that "[i]f a beneficiary contests the
trustee's account and the court determines that the contest was without reasonable cause
and in bad faith, the court may award against the contestant the compensation and costs
of the trustee and other expenses and costs of litigation, including attorney's fees,
incurred to defend the account."  (Prob. Code, § 17211, subd. (a).)  Kent argues that
based on his aforementioned complaints regarding the corporate structure of the law firm
representing the Trustee, their rendering of legal services was unlawful or impossible,
and costs should not have been awarded.  The authority cited by Kent does not support
this assertion.

Business and Professions Code section 6125 provides that "[n]o person shall
practice law in California unless the person is an active licensee of the State Bar."
Business and Professions Code section 6126 makes it a misdemeanor for a person to
practice law "who is not an active licensee of the State Bar, or otherwise authorized
pursuant to statute or court rule to practice law in this state at the time of doing so."
(Bus. & Prof. Code, § 6126, subd. (a).)  "Our courts have spun from these prohibitions a
policy against awarding attorney fees to unlicensed practitioners of law."  (*Estate of
Condon* (1998) 65 Cal.App.4th 1138, 1142.)[8]  But it is undisputed that Ross and Curtis's
counsel were members of the State Bar.  And no such policy against awarding attorneys'
fees to a client who has paid the fees without objecting that its counsel's *law firm* was not
registered in California has emerged.  (See *Frye v. Tenderloin Housing Clinic, Inc.*

---

[8]  Even this rule has its exceptions.  (See *Estate of Condon*, *supra*, 65 Cal.App.4th at pp.
1143-1148 [out-of-state law firm entitled under Probate Code to fees for services
rendered to out-of-state executor client].)

15

(2006) 38 Cal.4th 23, 48-50 [concluding that requiring disgorgement of fees by non-profit defendant because of failure to register is disproportionate to the wrong and "would constitute a totally unwarranted windfall" to plaintiff]; *Olson v. Cohen*, *supra*, 106 Cal.App.4th at p. 1215 ["To require disgorgement of fees because of a failure to register the corporation . . . is disproportionate to the wrong"].)  As such, we must reject this assertion of error.  Further, we reject the related assertion that Exhibit R regarding the Trust's litigation expenses should have been admitted for its relevance to proving the Trust paid Alling & Jillson for their representation.  The fact that the Trust paid Alling & Jillson did not render the Trust unable to recoup the fees it incurred.

### III.  DISPOSITION

The judgment and decree are affirmed.  Respondents Ross and Curtis Johnson shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

/S/

RENNER, J.

We concur:

/S/

RAYE, P. J.

/S/

HULL, J.

16